**Abram M. APPLEBAUM, Plaintiff-Appellant,**

v.

**AMERICAN EXPORT ISBRANDTSEN LINES, Defendant-Appellee.**

No. 90, Docket 72–1293.

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1972.

Decided Dec. 13, 1972.

Theodore H. Friedman, New York City (Arum, Friedman & Katz, Henry Isaacson, David G. Miller, New York City), for plaintiff-appellant.

M. E. DeOrchis, New York City (Haight, Gardner, Poor & Havens, Stephen K. Carr, New York City, of counsel), for defendant-appellee.

Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.

MANSFIELD, Circuit Judge:

In this seaman's action for damages for injuries attributed to an accident on board defendant's vessel, allegedly caused by the ship's unseaworthiness or defendant's negligence, the latter claim brought under the Jones Act,[1] the jury returned a verdict in favor of the defendant. Upon this appeal the seaman, Abram M. Applebaum, seeks a new trial, asserting as error various rulings by the district judge during the course of the trial. Because we conclude that one of these rulings was erroneous—the exclusion of an important witness' prior *consistent* statement as to certain essential facts regarding the accident after he had been impeached by a prior *inconsistent* statement—we reverse and remand for a new trial.

Appellant, employed aboard ship as a bedroom utility man, claimed that on September 30, 1968, because of a dangerous, slippery condition on an outside ladder located on the port side of the ship, the Export Aide, he slipped on the ladder as he was returning from his duty station on the starboard side of the boat deck to his forecastle on the port side of the main deck. Specifically his claims, as recorded in the pretrial order signed by the district court and by counsel for the parties, were that appellee was negligent, *inter alia*, "in permitting the steps of the ladder to remain in a slippery, wet, slushy, greasy and dangerous condition without taking the necessary steps and precautions to clean and remove the slippery substances; in creating a slippery, wet and slushy condition about the deck where soogieing [sic] operations were being conducted . . .", and that the vessel was unseaworthy, *inter alia*, because the steps of the ladder were permitted "to remain in a wet, slippery, slushy and dangerous condition" as a result of the shipowner's failure "to clean and remove, the slippery, greasy and soapy conditions of the steps of the said ladder."

Appellee's response in the pretrial order and at trial was a denial that the accident had occurred as alleged. It contended that if Applebaum injured himself while descending a ladder, the injuries were the result of his lack of care and not the unseaworthiness of the vessel or its negligence.

At trial Applebaum testified that on September 30, 1968, after crossing a portion of the officers' deck, which was wet, slippery and greasy, he slipped and fell while descending an outside ladder on the port side of the ship, leading from the officers' deck to the main deck, wrenching his back in the process. When questioned whether his testimony was that the ladder was "all wet and slippery with soogee material," he re-

1. 46 U.S.C. § 688.

sponded that "[t]hey had been soogee-ing." "Soogeeing" refers to a process by which the bulkheads or vertical surfaces of the ship are scrubbed with a soapy solution and rinsed off with water, whereas "washing down" is a process of hosing the decks with water only to rid them of debris.

To corroborate his own testimony, appellant offered the testimony of four seamen who had been aboard the vessel at the time of the accident, two of whom testified personally and two by deposition. Albert Lopes testified in person that while he did not observe the accident he had been soogeeing just prior to the fire and boat drill and that the officers' deck in the vicinity of the ladder leading down to the main deck was slippery from soap and water that remained. Another seaman, George Dixon, testified that he had been soogeeing on the morning of the accident, had seen Applebaum stretched out at the bottom of the ladder from the officers' deck to the main deck, and had observed, as he proceeded down the ladder, that it was wet, slippery and greasy as a result of soogeeing. A third witness, Jacob Landor, deposed that he saw Applebaum fall down the same ladder, which was on the port side of the ship and was wet and slippery at the time, and that soogeeing had occurred that morning.

The evidentiary question on this appeal relates to the deposition testimony of Daniel Donegan, which was offered at trial on January 30, 1972. Donegan had been deposed by counsel for both parties on June 16, 1971, and was unavailable because at sea when the trial commenced. By deposition he testified (1) that he among others had been soogeeing the bulkhead on the officers' deck just prior to the afternoon fire and boat drill (as well as washing down the decks earlier that morning), and (2) that he saw Applebaum fall on the *portside* ladder leading down from the officers' deck to the main deck. "To attack the man's credibility," defendant's counsel offered a statement taken by him from Donegan on May 13, 1971, one month before Don-

egan was jointly deposed, in which Donegan indicated that he did not remember whether he or anyone else had been soogeeing on the day of Applebaum's accident, that the accident had occurred on the *starboard* outside ladder, and that Applebaum had not fallen because he had caught himself on the handrail of the ladder.

When defense counsel expressed his intention to offer Donegan's prior contradictory statement, plaintiff's counsel countered that if it were received, he would rehabilitate the witness by introducing a prior statement given by Donegan to plaintiff's investigator in November 1968, only six weeks after the accident and some 2½ years prior to the later statements, which was consistent with Donegan's deposition testimony introduced at trial. The trial judge expressed his inclination to admit both statements since they went "to the credibility of Mr. Donegan" and to leave it to the jury to judge his credibility.

In view of this tentative ruling plaintiff did not object to defendant's introduction thereafter of Donegan's May 13, 1971 statement contradicting his deposition in material respects. However, when the prior consistent statement was later offered by plaintiff's counsel, it was not admitted by the court. Initially it was excluded because a conformed copy rather than the signed original was offered. Later, when the original was offered, the trial judge refused to admit it or to permit reference to it in summation, stating that while the inconsistent statement amounted to a charge that Donegan's trial testimony had recently been fabricated, see C. McCormick, Evidence § 49 at 109 (1954), rehabilitation through his earlier consistent statement was precluded because the earlier statement was not shown to have antedated the existence of a motive to fabricate, see Ryan v. United Parcel Service, Inc., 205 F.2d 362 (2d Cir. 1953), since it had been given by Donegan to a representative of Applebaum, who "was trying to make the best case for the plaintiff." Appellant then sought to introduce that

limited portion of the prior consistent statement in which Donegan described the accident as having occurred on the portside ladder between the officers' and main decks and stated that he and other members of the deck department had soogeed on that day. However, the offer was rejected as to any part of the statement.

■ Although at one time prior consistent statements were not generally admitted for the purpose of rehabilitating a witness after impeachment through his prior inconsistent statements, United States v. Sherman, 171 F.2d 619, 621–622 (2d Cir. 1948), cert. denied sub nom. Grimaldi v. United States, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738 (1949); 4 Wigmore, Evidence § 1126 (3d ed. 1940), that principle has in recent years been liberalized. The rule, as thus modified, was recently summarized in United States v. Zito, 467 F.2d 1401 at p. 1403 (2d Cir. 1972), where this Court stated

> "that prior consistent statements can only be introduced after a charge that a witness's story is a recent fabrication and where the statements were made before any motive to fabricate developed. Felice v. Long Island Railroad, 426 F.2d 192, 197, 198 (2d Cir. 1970), cert. denied, 400 U.S. 820, 91 S.Ct. '37, 27 L.Ed.2d 47; United States v. Fayette, 388 F.2d 728, 735 (2d Cir. 1968); United States v. Sherman, 171 F.2d 619, 622 (2d Cir. 1948), cert. denied sub. nom. Gimaldi v. United States, 377 U.S. 931, 69 S. Ct. 1484, 93 L.Ed. 1738; Proposed Federal Rules of Evidence, 801(d) (1)(B) (submitted to the Supreme Court in November 1971)."

Since the same exception is made by New York courts, see Moore v. Leventhal, 303 N.Y. 534, 104 N.E.2d 892 (1952); 1 Mottla's New York Evidence § 462 (2d ed. 1966), we would in any event be bound, to the extent that New York courts have modified the general rule against admission of prior consistent statements, to honor that modification. Rule 43(a), F.R.Civ.P.

Applying the rule in the present case, there was ample support in the record for Judge Bonsal's conclusion that defense counsel's impeachment of Donegan's trial testimony by introduction of his prior inconsistent statement amounted to a charge that his deposition testimony received at trial, insofar as it related to certain crucial issues (i. e., where Applebaum had fallen and whether his fall had been caused by soogeeing), was a recently concocted fabrication. From the opening statements throughout the trial there was a sharp conflict between the parties as to where and how Applebaum had been injured. His version, which was supported in varying degrees by each of four witnesses he called (including Donegan), was that he had fallen on the *portside* ladder because of a slippery, unseaworthy condition caused by the runoff of soapy soogee solution. Appellee, on the other hand, contended that the accident had not occurred in the place or manner claimed by Applebaum and, indeed, that while there had been washing down on the day of the accident there had been no soogeeing, which Applebaum had heavily relied upon as the basis of his claim of an unseaworthy condition. In support of its version the shipowner introduced evidence that when Applebaum reported the accident three days after it had allegedly occurred he was recorded by the purser as having said that he had been injured while coming down the inside midshiphouse ladder because his shoes were wet from the decks. Mere water on the decks, of course, would not ordinarily amount to an unseaworthy condition, and there was no suggestion of an unseaworthy condition on the *inside* ladder. Appellee further pointed to two Master's Certificates signed by Applebaum in which he requested medical treatment. In the first Applebaum stated that he "must have gotten [his] shoes wet on the decks because when [he] came *in* and started to walk down the stairs," (emphasis supplied), he slipped and was injured. In the second, he remarked that he had suffered a sec-

ond fall, which was "on the same stairs" as the first, and at trial both he and the purser testified that the second fall occurred on the inside ladder. Appellee also presented witnesses who testified that while there had been washing down on the day of the accident there had been no soogeeing.

In short, the shipowner from the outset took the position that "the stories that these gentlemen tell are diametrically opposed. There is absolutely something wrong with what someone is saying in this case." The record does not support appellee's present contention that there was "no real contradiction" between Donegan's trial deposition and the statement given by him to its investigator on May 13, 1971. A logical inference from the latter statement (given without an opportunity to refresh his recollection by reference to the statement given by him in November, 1968, 2½ years earlier) was that he was deliberately giving false testimony when he testified only one month later in his deposition taken on June 16, 1971, that he had witnessed the accident on the portside and that he had been soogeeing the bulkheads. The effort to impeach Donegan through the use of that statement was tantamount to a charge of recent fabrication.

■ Although the able trial judge accurately concluded that since introduction of Donegan's prior inconsistent statement amounted to a charge that his trial deposition was a recent fabrication the first condition for admission of his earlier consistent statement was satisfied, we fail to find any support for the judge's conclusion that the latter should have been excluded because a motive to fabricate had existed 2½ years earlier, when it was given. Donegan was not a party to Applebaum's lawsuit and had no stake in the outcome. There was no evidence of promises, coercion, or prejudice. The most that can be said in support of the early existence of such a motive was that Donegan had been acquainted with Applebaum as a shipmate and that the statement had been obtained from him by an investigator employed by Applebaum's counsel. Although, as the trial judge observed, the earlier statement probably had been prepared by an investigator "who was trying to make the best case for the plaintiff in bringing a lawsuit," the same could be said of the later inconsistent statement, which was obtained from Donegan by defense counsel. While each statement was signed by Donegan, the text of each does not appear to be in Donegan's handwriting. However, Donegan was far from inarticulate. He had attended college for two years, and his deposition testimony reveals him to have been alert, intelligent and coherent. Even if a motive on his part to help his friend Applebaum had arguably existed at the time of the prior consistent statement, as well as at the time of the later deposition used at trial, there is no showing that it did not also exist at the time of the intervening statement obtained by defense counsel.

Under all of the circumstances we are satisfied that the exclusion of Donegan's earlier consistent statement was error. Without it the jury could have inferred from his contradictory statement, given only one month prior to the deposition used at trial, that the deposition, to the extent that it was inconsistent, was a deliberate misstatement designed to assist Applebaum's case or that he had no accurate memory of the events on the day of the accident. The prior consistent statement, in sharp contrast to both of the later statements, however, was made only six weeks after the accident and provides a suitable base for application of the suggestion made by McCormick, Evidence § 49 at 109, that even when the self-contradiction amounts only to an imputation of inaccurate memory a "consistent statement made when the event was recent and memory fresh should be received in support." Felice v. Long Island R. R. Co., *supra*, 426 F.2d at 198 n.6. Here, whatever the inference to be drawn from Donegan's self-contradiction, the consistent statement, made so soon after the accident had oc-

curred, was necessary to give the jury a complete basis upon which to judge the credibility to be attached to his trial deposition's version of the accident, see United States v. Fayette, 388 F.2d 728, 733–735 (2d Cir. 1968). Because Donegan's credibility had to be gauged solely on the basis of written testimony, it was especially important for the jury, deprived of any chance to view his demeanor, to have the opportunity to compare the statements he gave at different intervals after the accident to the representatives of different parties. Rule 43, F.R.Civ.P., expresses a policy in favor of the reception of relevant evidence, and we would be remiss were we to uphold the exclusion of Donegan's prior consistent statement in the circumstances of this case.

Decisions relied upon by appellee are clearly distinguishable. In Felice v. Long Island R. R. Co., 426 F.2d 192 (2d Cir.), cert. denied, 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970), for instance, the consistent statements excluded by the court were those of the plaintiff, who had an obvious stake in the outcome. Moreover, unlike Donegan's prior consistent statement which predated his later statements, Felice's consistent statements *postdated* the earlier inconsistent statements relied on by defendant, and the fact that they were made after he began to contemplate the institution of suit provided a strong basis for the inference that a motive to fabricate had developed and that he was trying to make a self-serving record for use at trial. No such circumstances are found here.

■■ We cannot agree that the exclusion of Donegan's prior consistent statement was harmless error. The jurors, during the course of their two-day deliberations, sent out a note indicating that they could not decide on whether soogeeing took place on the day of the accident. Although counsel for appellant requested that the court advise the jury that soogeeing, as distinguished from a washdown procedure, was not a required element of appellant's case and that they did not have to find that it was the soogeeing which caused the wet, slippery condition of the ladder, the jury was instructed that the question of soogeeing had to be answered to obtain a verdict.[2] Subsequently the jury sent another note to Judge Bonsal asking if it is negligence to soogee on the day of a fire and boat drill. Appellee points to the interpretation of this sequence made by Applebaum's counsel at the trial that the "jury has now passed that soogeeing question," and to the cumulative testimony of appellant's other witnesses that soogeeing had taken place, to bolster its contention that the absence of Donegan's prior consistent statement from the jury's attention was harmless.

2. Appellant assails this ruling as error as well, relying on Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 523, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957); and Massey v. Williams-McWilliams, Inc., 414 F.2d 675 (5th Cir. 1969), cert. denied, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970). We find it unnecessary to decide this point, however, because of the necessity for a new trial in any event. We do note that the pretrial order, which can be changed only where manifest injustice would result, Rule 14, S.D.N.Y. Calendar Rules, specified that the accident was caused by a slippery condition created by soogeeing solution, which defendant negligently permitted. Furthermore, plain-

tiff's counsel so contended in his opening statement and plaintiff testified accordingly. Since a modification of the claim to assert in the alternative that the slipperiness was due to sea water would raise new issues, including the defense that the mere presence of sea water would not ordinarily constitute unseaworthiness or negligence, the belated alternative claim was properly rejected by the trial judge.

It is, of course, open to the appellant on remand to make timely application to amend the pretrial order to include the theory that appellee was liable for appellant's injuries because of the washdown procedure followed on the day of the accident, and within the discretion of the trial judge to allow or deny the amendment.

We agree with Judge Bonsal's response to the quoted comment of counsel, as indeed counsel himself later did, that his assumption that the jury had concluded there was soogeeing was only speculation. Only Donegan and one other witness (Lopes) testified to personal participation in the soogeeing operation in the vicinity of Applebaum's fall shortly before the fire and boat drill. Others testified to the contrary. In view of the sharp conflict in testimony, credibility was conceded by counsel and the court to be crucial. We are loath to speculate on what might be concluded from the successive jury notes and what weight the jurors might have attached to Donegan's testimony had rehabilitation been permitted.

■ Nor can we agree that exclusion of Donegan's prior consistent statement eliminated only cumulative testimony of unnecessary value. Donegan was appellant's first witness and, for whatever value it may have yielded in the jury's assessment of the reliability of his statements as compared with those of appellant's other witnesses, a person with a college education. The parties' sharply conflicting versions of what had occurred led the jury to declare itself unable to decide whether there was soogeeing on the day of the accident. It cannot be said that the admission of the prior consistent statement, corroborating the details of Donegan's trial deposition, the value of which had been severely cast in doubt, might not have affected the verdict, despite other testimony by the witness already in the case, cf. United States v. Zito, *supra.* The excluded statement did not relate to a fact established by other evidence, as appellee suggests, see 7 J. Moore, Federal Practice ¶ 61.07[2] at 1021 (2d ed. 1971), but rather to conflicting descriptions of events which the jury admittedly had difficulty in reconciling. The substantial right of appellant to have the jury make its decision on the basis of all admissible evidence offered was therefore violated. Rule 61, F.R.Civ.P.

In view of our disposition of the case, we find it unnecessary to determine whether, despite a stipulation at the outset of trial that a unanimous verdict of less than 12 jurors (but not less than 10) would be acceptable to appellant, it was error for the court to refuse to discharge the jury when 1 of 12 jurors failed to appear after the jury had commenced its deliberations and to permit a verdict to be rendered by the remaining 11.

■ The other errors asserted by appellant are without merit. Since the verdict was in favor of the defendant, it is "extremely improbable that the jury ever reached the only issue to which assumption of risk would have any relevancy [i. e., contributory negligence]," Clark v. Pennsylvania R. R. Co., 328 F. 2d 591, 595–596 (2d Cir.), cert. denied, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964) (F.E.L.A.). In any event the court's charge was sufficient to clarify the absence of assumption of risk as a defense. Finally, the court's limited encouragement to the jury to continue its efforts to reach a unanimous verdict without surrendering their individual convictions was well within permissible bounds. See, e. g., United States v. Martinez, 446 F.2d 118, 119–120 (2d Cir.), cert. denied, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 259 (1971); United States v. Bowles, 428 F.2d 592, 595–597 (2d Cir.), cert. denied, 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970); United States v. Hynes, 424 F.2d 754 (2d Cir.), cert. denied, 399 U.S. 933, 90 S.Ct. 70, 26 L.Ed.2d 804 (1970).

■ Appellant's contention that the trial judge erred in charging the jury that appellant assumed the burden of proving that the accident happened on the outside ladder and in substantially the manner claimed by him is likewise without merit. In the pretrial order and throughout trial appellant and his counsel contended that the accident occurred on the outside, portside ladder on September 30, 1968. Appellant and three other witnesses (Dixon, Landor and Donegan) so testified. It was only

after appellee introduced as part of its defense at trial recorded statements, made by appellant a few days after the alleged accident, to the effect that he had fallen on an inside ladder (without any assertion of slipperiness or of an unseaworthy condition) that appellant's counsel sought to shift the scene of the accident to an inside ladder, suggesting that the inside ladder might have become slippery by tracking of grease or grime from the outside. The attempt at such a late date to shift the scene of the accident, apparently with a view to reconciling appellant's claim with the ship's records, was properly denied. Since appellant and three other witnesses called by him testified to the locus of his fall, he was required in advance of trial to specify his claim accordingly rather than leave appellee in a quandary as to where and when the alleged fall occurred. Whether appellant will be permitted to amend the pretrial order to shift the scene of the accident rests in the trial judge's sound discretion.

Reversed and remanded for a new trial.