UNITED STATES of America, Appellee,

v.

Alvaro BURGOS and John Burgos, Defendants-Appellants.

Nos. 984, 930, Dockets 78–1018, 78–1019.

United States Court of Appeals, Second Circuit.

Argued May 19, 1978.

Decided July 20, 1978.

Peter J. Byrnes, Mineola, N. Y., for defendant-appellant Alvaro Burgos.

Irving Anolik, New York City, for defendant-appellant John Burgos.

Marc Marmaro, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., for S. D. New York; Richard D. Weinberg, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before KAUFMAN, Chief Judge, and MULLIGAN and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

John Burgos, Alvaro Burgos, and Herbert Quiceno were convicted of conspiracy to distribute or to possess with intent to distribute 3788 grams of cocaine, in violation of 21 U.S.C. §§ 841 and 846. John and Alvaro have appealed. We affirm as to Alvaro and reverse as to John.

On the evening of May 25, 1977, Special Agent Lopez of the Drug Enforcement Administration and Umberto Trujillo, a confidential informant, met Quiceno and Alvaro Burgos at an apartment occupied by two women, one of whom was Marianela Garcia.[1] After some discussion with Quiceno and Alvaro, Lopez arranged to buy five kilograms of cocaine the next day for $165,-000.

At 8:00 p. m. on May 26th, Lopez and Trujillo drove to the vicinity of the apartment building, which had been placed under surveillance by other DEA agents. Lopez told Trujillo to go to the apartment and tell

1. Garcia was indicted also, but was a fugitive at the time of trial.

Quiceno that Lopez was outside in the car with the money and wanted Quiceno to bring the cocaine down. Trujillo went into the building and, upon his return, informed Lopez, that Garcia, Alvaro, and Quiceno were in the apartment awaiting delivery of the cocaine. Lopez told Trujillo to go back and ask Quiceno to come down so that Lopez could talk with him. While Trujillo was gone, a yellow Volkswagen, with two male occupants, double-parked for several minutes about 100 feet from the apartment building and then left. Shortly thereafter, Trujillo returned with Quiceno, and Lopez showed them the money as evidence of his good faith. They agreed to make the transfer at a spot closer to the apartment building, provided this met with Alvaro's approval. As Quiceno was getting out of the car, he told Lopez that he had people in the vicinity to make sure the deal went smoothly. Meanwhile, the Volkswagen had returned; and, when another car pulled out, it parked in a spot directly in front of the building.

A few minutes later, Quiceno and Trujillo returned, and Lopez drove them around the corner to the spot agreed on for the transfer. Garcia then came out of the building carrying a white plastic shopping bag which contained the cocaine. She stopped briefly at the Volkswagen, leaned into the car on the passenger's side and then continued on toward Lopez' car. Alvaro followed a short distance behind. He too paused at the Volkswagen where he dropped off a blue shoulder bag. In the meantime, Garcia had put the shopping bag in Lopez' car and was returning to the apartment, stopping again en route at the Volkswagen. When Alvaro arrived to pick up the money, he and Quiceno were arrested.

■ The two occupants of the Volkswagen were apprehended also. However, only one of them, John Burgos, was tried, and his conviction must be reversed because the evidence against him was insufficient to support the jury's verdict. The Government argues that the jury might reasonably

have inferred that the cocaine was brought in the Volkswagen and taken to the apartment in the blue shoulder bag, and that John Burgos, Alvaro's brother, was acting as a lookout. These inferences are not supported by competent proof. Despite surveillance by Government agents, no one saw anything taken from the Volkswagen to the apartment. The blue shoulder bag, when taken from the Volkswagen at the time of the arrests, contained only a pair of pants and a shirt. The only non-hearsay evidence linking John to the conspiracy was his presence in the vicinity of the aborted drug transfer.[2] This was not enough. *United States v. Steinberg*, 525 F.2d 1126, 1134 (2d Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed. 794 (1976); *United States v. Ragland*, 375 F.2d 471, 477–78 (2d Cir. 1967), *cert. denied*, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968); *cf. United States v. Garguilo*, 310 F.2d 249, 253 (2d Cir. 1962). Accordingly, his conviction cannot stand.

■ Alvaro Burgos does not challenge the sufficiency of the evidence to convict him, but argues that his conviction was flawed by errors in the trial. He contends first that a statement he gave to an Assistant United States Attorney should not have been admitted into evidence. After his arrest, Alvaro was taken to DEA headquarters. En route, a Spanish-speaking agent gave him his *Miranda* warnings. At headquarters, after Alvaro had been advised again of his rights, he gave the agent a statement. Following this, he was taken to the detention center. The next morning, he was taken to the United States Attorney's office where he was interrogated by an Assistant United States Attorney at about 1:00 p. m. After being apprised for the third time of his constitutional rights, Alvaro gave a statement that was substantially the same as the one he had given on the previous evening. The interrogation concluded at about 1:40, and Alvaro was taken before a Magistrate at 2:00.

2. Proof that Alvaro and Garcia stopped briefly at the Volkswagen in which Alvaro's brother, John, was sitting falls far short of making John a participant in their illegal conspiracy.

Alvaro now contends that his youth, lack of formal education, and inability to speak English made the foregoing process so intimidating as to taint his confession. There is no indication in the record, however, of any psychological coercion. When the Assistant United States Attorney asked Alvaro if he had any complaints about how the arresting agents had treated him, Alvaro replied that they had treated him very well. He was interrogated in Spanish on two occasions, neither of which exceeded forty minutes, and the statements he gave were consistent with each other. The lapse of fifteen hours between Alvaro's arrest at 11 p. m. and his appearance before the Magistrate at 2:00 p. m. the next day did not, standing alone, require the exclusion of his voluntary confession. *United States v. Warme*, 572 F.2d 57, 61 n. 3 (2d Cir. 1978); *United States v. Ortega*, 471 F.2d 1350, 1362 (2d Cir. 1972), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); *United States v. Marrero*, 450 F.2d 373, 377–78 (2d Cir. 1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972). This is not a case where the accused was threatened, tricked, or cajoled into waiving his rights. *See United States v. Duvall*, 537 F.2d 15, 24 (2d Cir.), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). The trial judge found that there had been great solicitude for Alvaro's rights, and this finding was not clearly erroneous. *See United States v. Friedman*, 558 F.2d 1125 (2d Cir. 1977).

■ Alvaro's other contentions require little discussion. The district court's refusal to sever his trial from that of Quiceno was not an abuse of discretion under the guidelines set forth in *United States v. Taylor*, 562 F.2d 1345, 1362–63 (2d Cir.), *cert. denied*, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977) & 434 U.S. 853, 98 S.Ct. 170, 54 L.Ed.2d 124 (1977). The district court did not err in refusing to give a "missing witness" instruction as to the informant Trujillo, who was made available to defense counsel both for interview and for testimony. *See United States v. Erb*, 543 F.2d 438, 444–45 (2d Cir.), *cert. denied*, 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976).

■ The district judge instructed the jury that under the conspiracy charge, the Government need not prove that the defendants actually possessed or distributed the cocaine, the gist of the offense being the agreement to do so. The Government contends that the offense of simple possession, 21 U.S.C. § 844, was not, therefore, "an offense necessarily included in the offense charged." Fed.R.Crim.P. 31(c). *See Waker v. United States*, 344 F.2d 795, 797–98 (1st Cir. 1965); 2 C. Wright & A. Miller, *Federal Practice and Procedure* § 515 at 374–75. *But see United States v. Whitaker*, 144 U.S.App.D.C. 344, 349, 447 F.2d 314, 319 (1971). We need not reach this issue, however, because the defendants were entitled to a lesser-included-offense charge only if it was warranted by the evidence. Here the evidence clearly pointed to the conclusion that the cocaine was for distribution, not mere possession. *United States v. Marin*, 513 F.2d 974, 977 (2d Cir. 1975).

■ There was no prejudicial disparagement of Alvaro's counsel by the trial judge. Nor did the judge abuse his discretion in denying Alvaro a continuance because Alvaro retained new counsel two weeks prior to the date set for trial. *See United States v. Hall*, 448 F.2d 114 (2d Cir. 1971), *cert. denied*, 405 U.S. 935, 92 S.Ct. 971, 30 L.Ed.2d 810 (1972).

Alvaro Burgos received a fair trial. His conviction is affirmed. The conviction of John Burgos is reversed, and the matter is remanded to the district court with instructions to dismiss the indictment.