UNITED STATES of America, Appellee,

v.

Jose Edgar LOPEZ, Appellant.

No. 742, Docket 77–1447.

United States Court of Appeals, Second Circuit.

Argued March 7, 1978.

Decided Sept. 13, 1978.

Neaher, District Judge, sitting by designation, dissented and filed opinion.

Robert J. Rapoport, Syosset, N. Y., for appellant.

Richard L. Huffman, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., Eastern District of New York, Mary McGowan Davis, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before OAKES, Circuit Judge, WYZANSKI * and NEAHER,** District Judges.

OAKES, Circuit Judge:

Jose Edgar Lopez appeals from a judgment of the United States District Court for the Eastern District of New York, Mark A. Costantino, Judge, convicting appellant, after a jury trial, of conspiring to import and to possess with intent to distribute a quantity of cocaine, 21 U.S.C. § 846.[1]

---

* Of the District of Massachusetts, sitting by designation.

** Of the Eastern District of New York, sitting by designation.

1. Appellant was sentenced to five years' imprisonment, six months to be served in prison, the balance on probation, with a special parole term of ten years and deportation to follow. The district court further indicated that it would entertain a motion for reduction of sentence if appellant would voluntarily agree to depart the United States prior to his surrender. Sentence was stayed pending appeal, and Lopez is currently free on bail.

2. Romero: Yes . . . look . . . I . . I'm out here, at the airport, pal . . . if you can . . . how is it that I was here until 5 o'clock . . . I've been calling you and no . . . no . . .

Appellant argues that there was insufficient evidence to support the verdict against him, that the prosecutor's summation violated appellant's Fifth Amendment right against self-incrimination, and that the district court failed properly to instruct the jury that no inference adverse to appellant could be drawn from his failure to testify.

■ The sufficiency of the evidence is beyond dispute. The Government's primary witness was a coconspirator, Arturo Romero, was who arrested at John F. Kennedy International Airport with 328 grams of cocaine. He testified that he had met appellant on a previous visit from Venezuela, and that they subsequently discussed the possibility of importing cocaine. He further revealed that appellant telephoned him in Venezuela to advise that a man called Caesar would contact Romero concerning the cocaine which Romero was to bring into the United States. Caesar contacted Romero, gave him the cocaine and made arrangements for Romero's trip to New York. After Romero was apprehended at the airport, he agreed to assist law enforcement authorities. He telephoned appellant at the latter's home, dialing the telephone number by memory, and the conversation was recorded by Government agents. The dialogue, without expressly mentioning the subject of narcotics, consisted of a series of inquiries by appellant seeking assurance that everything had gone well.[2] They agreed to meet

---

Lopez: But did it go well for you?

    \*   \*   \*   \*   \*   \*

[discussion of Romero's difficulty with a provisional passport]

Romero: . . . I don't know where to go, what hotel should I go to? . . .

Lopez: Come over to 55th and 7th Avenue, I'll wait for you on the corner over there.

Romero: O.K.

Lopez: Listen . . .

Romero: Aha . . .

Lopez: It went well, right?

Romero: Well, yes, it went well, pal.

Lopez: You aren't lying to me?

Romero: No, I'm not lying, everything is all right.

Lopez: Careful brother!

Romero: No, don't worry.

Lopez: You're not going to cause me any problem, no?

Romero: No, don't worry.

in Manhattan at 55th Street and Seventh Avenue. The meeting took place under surveillance, after appellant took considerable care to make certain that no one was following Romero, who had been given a dummy load of narcotics by the agents. Appellant was arrested as he and Romero were leaving a coffee shop at the northeast corner of the above-mentioned streets. Following appellant's arrest, his address book, which contained Romero's telephone number and address in Venezuela, was seized. After advice as to his constitutional rights he made two false exculpatory statements, denying that he knew Romero and that he had been a party to the taped telephone call. The defense did not offer any evidence to rebut the Government's version of the events. Clearly, the evidence was sufficient to justify the jury's verdict of guilt.

■ Lopez complains that three statements of the prosecutor during summation amounted to indirect commentary on appellant's failure to testify. The first two statements implied that the telephone conversation between Romero and appellant, recorded at the airport, was susceptible of only one interpretation—discussion of the cocaine transaction. The prosecutor, in initial summation, stated:

> I'd like you to read that translation, which you'll have in the jury room again. I want to hear I'm interested in hearing in summation [defense counsel's] explanation of it. No names at the beginning. "Who am I talking to? With a friend. It's me. Yes, I already know. Did it go well? It went well."

During rebuttal the prosecutor again alluded to the telephone call as follows:

> Gee, you know, that phone call I asked, I thought maybe there would be some explanations [sic] for the languages [sic] in the phone call. If there was some, I guess I must have missed it.

Lopez: You're not going to get me into any trouble, Arturo.
Romero: No, don't worry.

**3.** The prosecutor stated:
> In conclusion, Mr. Rapoport, as I said before, has subpoena powers. Do you remember he

No objection was made to either of these references to the telephone call, and no curative instruction or charge was sought. Thus, reversal is proper only if the prosecutor's comments were so prejudicial as to constitute plain error. *See United States v. Briggs*, 457 F.2d 908, 912 (2d Cir.), *cert. denied*, 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972).

We hold that the jury would not "naturally and necessarily," *see United States ex rel. Leak v. Follette*, 418 F.2d 1266, 1268–69 (2d Cir. 1969), *cert. denied*, 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970); *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977), interpret the prosecutor's remarks in this case as a comment on appellant's failure to testify. Rather, these statements were simply comments on the weakness of the defense case, well within permissible bounds of advocacy. *See United States v. Rodriguez*, 556 F.2d 638, 641–42 (2d Cir. 1977) (prosecutor may tell jury that certain factual evidence is "uncontradicted" and that "nothing in the record places the proffered evidence in doubt"), *cert. denied*, 434 U.S. 1061, 98 S.Ct. 1233, 55 L.Ed.2d 762 (1978); *cf. United States v. Bubar, supra*, 567 F.2d at 199–200 (prosecutor's reference in rebuttal to defendants' failure to "explain" or "refute" certain evidence in response to defendants' counsel's arguments permissible).

■ Appellant also objects to the prosecutor's suggestion in initial summation that if appellant had had a steady job for four years, as his attorney claimed, the work records would have been produced.[3] This reference was very likely not improper in view of the fact that on cross-examination of Mr. Romero defense counsel stressed that appellant had worked as a clerk for a given concern for four years. *See United States*

asked the so-called question, got in a lot of stuff about where Mr. Lopez was supposedly working. Where are the work records if he was working at this place, whatever it was, on that day? Could have brought them in.

*v. Bubar, supra,* 567 F.2d at 199–200; *United States v. Rodriguez, supra,* 556 F.2d at 641–42; *cf. United States v. Floyd,* 555 F.2d 45, 47 (2d Cir. 1977) (prosecutor's reference in rebuttal summation to defendant's power to subpoena witnesses, in response to defense summations referring to the Government's failure to produce certain witnesses did not deprive appellants of their right to rely on the prosecution's burden of proof), *cert. denied,* 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977). In any event, upon defense counsel's objection, the court instructed the jury to disregard the comment and also instructed the jury three times that appellant was not required to prove his innocence or to submit evidence on his own behalf.[4] Any error, therefore, was harmless.

■ Appellant also claims that the trial court erred in failing to instruct the jury that no adverse inference could be drawn from Lopez' failure to testify or to produce evidence in his behalf. This contention is frivolous not just because counsel neither objected to the charge nor asked for additional cautionary instructions but because the jury was instructed that "no inference of any kind," *see* note 4 *supra,* could be drawn from appellant's failure to testify or to produce evidence.

■ Although not urged below or on appeal there is a serious question whether

certain out-of-court declarations of Romero were improperly admitted. *Krulewitch v. United States,* 336 U.S. 440, 443–44, 69 S.Ct. 716, 93 L.Ed. 790 (1949), as modified by *Lutwak v. United States,* 344 U.S. 604, 617–19, 73 S.Ct. 481, 97 L.Ed.2d 593 (1953), and *Anderson v. United States,* 417 U.S. 211, 218–19, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), holds that hearsay declarations (as opposed to acts) of one alleged coconspirator made *after* the conspiracy ends may not be admitted against the other conspirator to prove the existence of the conspiracy. While Romero's taped telephone conversation may be said to have occurred after the conspiracy ended, because Romero was already arrested and the narcotics seized, *Fiswick v. United States,* 329 U.S. 211, 217, 67 S.Ct. 224, 91 L.Ed. 196 (1946), it was offered not to prove the truth of the declarations but to prove that Romero and Lopez knew each other. It was, therefore, not hearsay and admissible. *See Anderson v. United States, supra,* 417 U.S. at 219–21, 94 S.Ct. 2253; Fed.R.Evid. 801(c). So, too, evidence of the meeting itself, if a "statement" at all, *see* Fed.R.Evid. 801(a), was admissible under *Lutwak* and *Anderson* because it was post-conspiracy conduct. *See United States v. Bermudez,* 526 F.2d 89, 95–96 (2d Cir. 1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). Romero's post-arrest statements to the law enforcement authorities which implicated Lopez are in a differ-

---

4. The court charged:

You, the jury, will remember that a defendant is never to be convicted on mere suspicion or conjecture. The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant. The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. If the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, you, the jury, must, of course, adopt the conclusion of innocence.

A reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence. Since the burden is upon the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon failure of the prosecution to establish such proof.

* * * * *

In a criminal case a defendant need not take the witness stand and testify, and no presumption of guilt may be raised, and no inference of any kind may be drawn from the failure of a defendant to testify, nor may you comment in your deliberations on the failure to do so.

The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

* * * * *

Let me state to you here that the burden is upon the prosecution to prove beyond a reasonable doubt each and every essential element of the crime charged. Failure to do so requires you to find the defendant not guilty. The burden never shifts to the defendant to prove his innocence. The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

ent category. The traditional view is that prior consistent statements of a declarant offered to prove the truth of the matter asserted are inadmissible hearsay. *McCormick on Evidence* § 251, at 601–04 (2d ed. 1972); 4 *Wigmore on Evidence* §§ 1123–24, at 254–55, 1132, at 294–96 (Chadbourn ed. 1972). Where the declarant is present and subject to cross-examination, however, as was Romero, they are arguably not hearsay. *E. g., McCormick on Evidence, supra; see* 3A *Wigmore on Evidence, supra,* § 1018, at 995–96 (Chadbourn ed. 1970) (criticizing orthodox view excluding prior inconsistent statements on hearsay grounds when witness is subject to cross-examination). It is unnecessary, however, to grapple with this rather abstract question which also implicates matters of policy.[5] The rule is that once a witness's testimony has been attacked as a recent fabrication or he is charged with improper influence or motive, his prior statements consistent with his testimony are admissible for the limited purpose of rehabilitation. Fed.R.Evid. 801(d)(1)(B); *e. g., Applebaum v. American Export Isbrandtsen Lines,* 472 F.2d 56, 60 (2d Cir. 1972), and cases cited therein. Romero's prior statements would very likely have been admissible on redirect examination in light of appellant's counsel's repeated attempts during cross-examination to portray Romero as a liar.[6] Moreover, while these statements may have bolstered Romero's credibility slightly, other evidence, such as the existence of his South American telephone number in Lopez' address book, appears more corroborative of Romero's trial testimony. Because Romero's statements to the agents were not crucial, could have been admitted for a limited purpose, and were not objected to below or on appeal, we do not view their admission as plain error.

Judgment of conviction affirmed.

**NEAHER, District Judge, dissenting:**

With appreciation for the majority's careful consideration of questions which did not surface until the hearing of the appeal, I nonetheless am unable to concur in the affirmance of appellant's conviction and therefore, with deference, dissent. In my view, prejudicial error occurred at trial which necessarily affected the jury's verdict and a new trial is therefore required in the interests of justice.

This was a marginal conspiracy case at best—obviously brought as such not because the government had solid evidence of Lopez's complicity, but because its agents had failed to obtain such evidence in their eagerness to effect an arrest. The credibility of the government's principal witness, Romero, was seriously in question, so much so as to prompt the experienced trial judge to comment:

> "I can say that there is an awful lot to be desired in his testimony . . . . He's about the closest or the worst that I have had in 21 years. And I just hope that he is being truthful. It would be a terrible thing if a young man has to go to jail for a liar." Tr. (7/21/78) at 152.

Even though the uncorroborated testimony of a coconspirator may be sufficient to support a conviction, *United States v. Tyminski,* 418 F.2d 1060 (2 Cir. 1969), it is unlikely that this case would have gone to the jury on Romero's inconsistent testimony alone. Indeed, the taped telephone conversation and Lopez's subsequent meeting with Romero were recognized as crucial by the government to support its burden of proving by independent evidence that appellant was a participant in the alleged conspiracy, which concededly ended—if it ever existed—when Romero was arrested while at-

---

**5.** Prior consistent statements are generally held inadmissible if offered prior to impeachment as "unnecessary and valueless . . . cumbersome," 4 *Wigmore on Evidence, supra,* § 1124 & n. 2, if not irrelevant, *United States v. Sherman,* 171 F.2d 619, 622 (2d Cir. 1948), *cert. denied,* 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738 (1949).

**6.** The defense presented no witnesses. Rather, counsel sought to discredit the Government's key witness, Romero, by interrogating him on the details of the alleged conspiracy, his post-arrest conversation with the arresting agents, and his testimony before the Grand Jury.

tempting to pass through Customs with a package of cocaine. Yet this is where I believe reversible error first occurred, because it is precisely the post-arrest declarations and acts of Romero—uttered and performed in the course of his cooperation with the government—that are not admissible as substantive evidence in a case such as this.

As pointed out in *Fiswick v. United States,* 329 U.S. 221, 246, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946),

"confession or admission by one coconspirator after he has been apprehended is not in any sense a furtherance of the criminal enterprise. It is rather a frustration of it. . . . He thereupon cease[s] to act in the role of a conspirator. His admissions [are] therefore not admissible against his erstwhile fellow-conspirators."

The *Fiswick* rule has been reaffirmed in *Krulewitch v. United States,* 336 U.S. 440, 442–43, 69 S.Ct. 716, 93 L.Ed. 790 (1949), and *Lutwak v. United States,* 344 U.S. 604, 617, 73 S.Ct. 481, 97 L.Ed. 593 (1953), and is still recognized as good law on its precise holding. See *Anderson v. United States,* 417 U.S. 211, 218–19, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1975); *United States v. DeVaugn,* 579 F.2d 225 (2 Cir. 1978); *United States v. Bermudez,* 526 F.2d 89, 95–96 (2 Cir. 1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). In *DeVaugn, supra,* the author of the majority opinion noted the sound reason and policy of the rule as stated by Mr. Justice Jackson in his concurring opinion in *Krulewitch, supra,* 336 U.S. at 456, 69 S.Ct. at 724:

"Conspirators, long after the contemplated offense is complete, after perhaps they have fallen out and become enemies, may still incriminate each other by deliberately harmful, but unsworn declarations, or unintentionally by casual conversations out of court."

Plainly, Romero's post-conspiracy declarations uttered not only after he had been apprehended, but after he had agreed to assist the government, lie well beyond the outer limits of the ongoing-conspiracy exception to the hearsay rule, now embodied in Rule 801(d)(2)(E), F.R.Evid., and should have been excluded from the jury's consideration as substantive evidence of the offense charged.

Post-conspiracy acts, of course, stand on a different footing, because the bar to the admission of hearsay is not applicable. Nonetheless, once a conspiracy has come to an end, whether by completion or frustration, agency principles have no bearing, and the acts of one conspirator are admissible against another only "if relevant to prove the existence of the conspiracy." *Anderson v. United States, supra,* 417 U.S. at 219, 94 S.Ct. at 2260. See *Lutwak v. United States, supra,* 344 U.S. at 618, 73 S.Ct. 481; *United States v. Bermudez, supra,* 526 F.2d at 95–96; *United States v. Tramunti,* 513 F.2d 1087, 1116 (2 Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). Obviously, the post-conspiracy conduct (or, for that matter, declarations) of a self-proclaimed former conspirator acting in the capacity of government agent cannot be regarded as substantive evidence relevant to proving the prior existence of the conspiracy; if such evidence is to be introduced, it must be for a more limited purpose, and its introduction must be accompanied by appropriate limiting instructions to the jury.

At trial, unfortunately, this case was treated as one of a continuing conspiracy. Romero was permitted to testify to what he had said to the agents after his arrest, and his statements to Lopez in the telephone conversation were placed before the jury with no attempt to follow the procedure which *Lutwak, supra,* mandates. As the Court there pointed out, such "declarations must be carefully and clearly limited by the court at the time of their admission and the jury instructed as to such declarations and the limitations put upon them." 344 U.S. at 619, 73 S.Ct. at 490. Moreover, the trial court went so far as to permit two of the arresting officers, Agents Cipriano and Giaimo, to testify that Romero told them he was to deliver the cocaine to Lopez. Finally, testimony concerning the meeting between Lopez and Romero in Manhattan was

admitted without any instruction to the jury that the meeting constituted no part of the conspiracy charged and was, therefore, to be considered only as evidence of the prior existence of the conspiracy.

In my view, *Fiswick-Lutwak-Anderson* principles prohibit the government's attempt to substitute prosecutorial innuendo for the evidence its post-conspiracy investigative techniques had failed to produce. The post-conspiracy telephone conversation it relies on is wholly lacking any recognizable inculpatory admission by Lopez or revelation of any circumstantial facts which would rationally support a finding of his participation in the narcotics conspiracy charged. As it stands, it is without probative value,[1] however much one may *suspect* that Lopez's expressions of fear that Romero might get him into trouble had something to do with criminal activity—activity which could just as well have been Romero's admitted fraudulent entry into the United States as the importation of narcotics.

A jury, of course, may not base its verdict upon suspicion or conjecture, nor find a defendant guilty of conspiracy simply because he is acquainted with a self-proclaimed conspirator or his plans to violate the law. See *United States v. Burgos,* 579 F.2d 747 at 749 (2 Cir. 1978); *United States v. Steinberg,* 525 F.2d 1126, 1134 (2 Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *United States v. Johnson,* 513 F.2d 819, 823–24 (2 Cir. 1975); *cf. United States v. Guillette,* 547 F.2d 743, 750–51 (2 Cir. 1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977); *United States v. Torres,* 503 F.2d 1120, 1124 (2 Cir. 1974); *United States v. Sisca,* 503 F.2d 1337, 1343 (2 Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. Ragland,* 375 F.2d 471, 477–78 (2 Cir. 1967), *cert.*

*denied,* 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2 987 (1968).

Lopez's later act of meeting Romero is equally without probative value, however suspicious it may have seemed to the surveilling agents. There was no proof of any incriminatory conversation between Lopez and Romero, no handling of any suitcase, no transfer of any narcotics or money. The best the government could come up with were "false exculpatory statements" made by appellant immediately after his arrest; *viz.,* that he did not know Romero, had never met him before, and had been called by Romero's brother to pick him up. As this court has held in reversing a defendant's conviction for narcotics conspiracy, "falsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to convict where other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt." *United States v. Johnson, supra,* 513 F.2d at 824.

Second, I cannot accept the majority's view that Romero's post-arrest statements to authorities, implicating Lopez, lie beyond the purview of the *Fiswick-Lutwak-Anderson* rule and were therefore admissible without any limiting instruction. To the extent that the majority finds these statements to be non-hearsay simply because Romero testified at the trial, this court's recent decision in *United States v. Check,* 582 F.2d 668 at 680–682 (2 Cir. 1978), is plainly to the contrary. Moreover, I find unpersuasive the suggestion that Rule 801(d)(1)(B), F.R.Evid., exempts these statements from the operation of the hearsay exclusion because consistent with Romero's in-court testimony.

Were Rule 801(d)(1)(B) in fact applicable, the agents' testimony as to what Romero

---

1. I cannot agree with the majority's suggestion that the post-conspiracy taped telephone conversation, initiated by Romero acting as an agent of the government, was offered only to prove that Romero and Lopez knew each other. That was not a real issue in the case, and in any event the defense ultimately stipulated to

their previous acquaintance. Indeed, as the majority recognizes, the telephone conversation was emphasized and re-emphasized by the prosecutor in summation as proof of a cocaine transaction to which the defense had supplied no other explanation.

had told them would have served not only as rehabilitating evidence, but as substantive evidence as well. See Advisory Committee Note to F.R.Evid. 801(d)(1)(B), 56 F.R.D. 183, 296 (1972); *cf.* McCormick on Evidence § 251, at 604 (2d ed. 1972). Although Rule 801 has in this sense expanded the use to be made of such statements once properly admitted, nothing in the rule or in its history indicates that the traditional bases for the admission of prior consistent statements of a witness have been substantially relaxed or eliminated. The "usual rule," as this court observed in *United States v. Zito,* 467 F.2d 1401, 1403–04 (2 Cir. 1972) (citing, *inter alia,* then Proposed F.R. Evid. 801(d)(1)(B)), is that "prior consistent statements can only be introduced after a charge that a witness's story is a recent fabrication and where the statements were made before any motive to fabricate developed." *Applebaum v. American Export Isbrandtsen Lines,* 472 F.2d 56 (2 Cir. 1972), cited by the majority, endorses this view, as does *United States v. Check, supra,* at 680–681. See also *DiCarlo v. United States,* 6 F.2d 364, 366 (2 Cir.), *cert. denied,* 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925); *McCormick, supra,* § 49, at 105. Yet here the motive for fabrication urged on cross-examination—that Romero hoped to benefit from his "cooperation" with government agents [2]—clearly existed at the time the statements were made. In the absence of some alternative basis for admission—*e. g.,* a suggestion of faulty memory on the part of Romero—I am persuaded that it was plain error to admit the agents' testimony, since the inevitable effect was to bolster Romero's doubtful credibility by evidence wholly inadmissible against appellant.

In view of the character of the evidence offered at trial, it is no wonder that the prosecution first called upon and then chided the defense for failing to explain the taped conversation. I cannot agree with the majority's conclusion that these remarks were permissible "comments on the weakness of the defense case." Indeed, as the majority notes, appellant did not put on a case and offered no explanation for the telephone conversation, electing instead to put the government to its proof. In my view, these remarks were constitutionally improper allusions to appellant's failure to testify, and reflect an attempt to impose on a criminal defendant the burden of providing an innocent explanation for his conduct.

The Supreme Court has recently reminded us that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor v. Kentucky,* 436 U.S. 478, 485, 98 S.Ct. 1930, 1935, 56 L.Ed.2d 468 (1978). As *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), teaches, among those circumstances which may not be considered is the defendant's decision to withhold his testimony and to " 'rely upon the presumption of innocence which the law gives to everyone.' " *Id.* at 613, 85 S.Ct. at 1232 (quoting *Wilson v. United States,* 149 U.S. 60, 66, 13 S.Ct. 765, 37 L.Ed. 650 (1893)). Although the *Griffin* rule—which "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt," 380 U.S. at 615, 85 S.Ct. at 1233 may make the task of the prosecutor more difficult, it plays a fundamental role in our system of criminal justice:

> "The presumption of innocence and the protections afforded by the Due Process Clause impose a significant cost on the prosecutor who must prove the defendant's guilt beyond a reasonable doubt without the aid of his testimony. That cost is justified by the paramount importance of protecting a small minority of accused persons—those who are actually innocent—from wrongful conviction."

*Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 1096, 55 L.Ed.2d 319 (1978) (Stevens, J., dissenting).

This is not to say that the prosecutor may not engage in normal advocacy regarding

**2.** See Tr. (7/27/77), 139, 169–71; Tr. (7/28/77), 50–52, 60–62.

the strength of the government's case.[3] But here the permissible latitude was far exceeded. The argument of defense counsel here was directed almost entirely to asserted inconsistencies and flaws in the testimony of the government's principal witness, Romero. He dealt only briefly with the taped telephone conversation, and in a manner hardly calculated to provoke the prosecutor's remarks. While the prosecutor may well have anticipated some effort by defense counsel to offer an alternative interpretation of the tape, I am hard pressed to believe that he was in any sense surprised by the argument actually made. Indeed, if the prosecutor believed that explication was in order, it was his obligation to provide it; plainly he could not compel appellant—directly or indirectly—to do so.

In my view, this case is controlled by the traditional formula, most recently stated by this Court in *United States v. Bubar,* 567 F.2d 192, 199 (2 Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977), that a prosecutor's characterization of government evidence as "uncontradicted" or "unexplained" is constitutionally impermissible "only if either the defendant alone has the information to contradict the government evidence referred to or the jury 'naturally and necessarily' would interpret the summation as a comment on the failure of the accused to testify." See *United States v. Dioguardi,* 492 F.2d 70, 82 (2 Cir.), *cert.*

denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974); *United States ex rel. Leak v. Follette,* 418 F.2d 1266, 1269 (2 Cir. 1969), *cert. denied,* 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970); *United States v. Lyon,* 397 F.2d 505, 509 (7 Cir. 1968). I think it evident that only appellant could have provided the explanation called for, and that the prosecutor's remarks were calculated to bring this fact to the jury's attention—and undoubtedly did so.

It may well be that the test should be relaxed where references to "uncontradicted" evidence are fairly intended to clarify the case for the jury—as where the defense has offered evidence to meet some but not all of the government's proof, see, e. g., *United States ex rel. Leak v. Follette, supra; United States v. Dioguardi, supra,* or where defense counsel has offered explanations or theories which might plausibly have been supported by the testimony of witnesses, other than the defendant, who were not called, see, e. g., *United States v. Bubar, supra; United States v. Floyd,* 555 F.2d 45 (2 Cir.) *cert. denied,* 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977). But where, as here, the government's case is weak, the prosecutor's remarks are made *sua sponte* rather than in reaction to the arguments of defense counsel, and no curative instruction or charge is provided by the court, I believe the prejudice to the defendant is plain.[4] To

---

3. This Court has repeatedly held that "[t]he prosecutor is entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's case, . . . as well as his failure to support his own factual theories with witnesses." *United States v. Bubar,* 567 F.2d 192, 199 (2 Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977) (citations omitted). See, e. g., *United States v. Floyd,* 555 F.2d 45 (2 Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977); *United States v. Rodriquez,* 556 F.2d 638 (2 Cir. 1977), *cert. denied,* 434 U.S. 1061, 98 S.Ct. 1233, 55 L.Ed.2d 762 (1978); *United States v. Dioguardi,* 492 F.2d 70 (2 Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974); *cf. United States v. Rubinson,* 543 F.2d 951, 965–66 (2 Cir. 1976).

4. Compare *United States v. Bubar, supra,* where this Court held nonprejudicial similar remarks of the prosecutor, only after finding

that they had been directed at the argument of defense counsel and that

"[A]ny conceivable misunderstanding on the part of the jury was nipped in the bud by Judge Newman's emphatic curative instructions—given first sua sponte at the end of the prosecutor's rebuttal summation and again after a recess in a formulation submitted by [defense] counsel." 567 F.2d at 200 (footnote omitted).

See also *United States v. Burse,* 531 F.2d 1151 (2 Cir. 1976). Also instructive is the Sixth Circuit's decision in *United States v. Smith,* 500 F.2d 293 (1974), reversing a conviction where in summation the prosecutor had "asked" that the defendants explain a number of cryptic telephone conversations, even though a cautionary instruction was made at the close of the prosecutor's summation, because the court failed immediately to warn the jury that no adverse inference could be drawn from the defendants' silence. The First Circuit apparently

hold otherwise is to present an open invitation to prosecutors to cross a line that may not be bright, but nonetheless has been drawn by the fifth amendment.

For the foregoing reasons, I find it impossible to conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error . . . [and] that substantial rights were not affected." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

Accordingly, I would reverse.

Oakes, Circuit Judge, dissented with opinion.

applies a similar rule when the prosecutor in summation characterizes government evidence as uncontradicted and only the defendant himself or a non-testifying co-defendant can be expended to provide contradictory evidence. See *United States v. Flannery,* 451 F.2d 880 (1 Cir. 1971); *Desmond v. United States,* 345 F.2d 225 (1 Cir. 1965).