UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Lee BOLICK,
Defendant–Appellant.

No. 89–5047.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1989.

Decided Oct. 23, 1990.

As Amended Nov. 6, 1990.

Neill A. Jennings, Jr., Greensboro, N.C., for defendant-appellant.

Thomas J. Ashcraft, U.S. Atty., W.D. N.C., Charlotte, N.C., for plaintiff-appellee.

Before RUSSELL, PHILLIPS, and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Michael Bolick has appealed his conviction for conspiring to sell, and selling, cocaine. Bolick's primary contention is that the trial court impermissibly admitted prior consistent statements of government witnesses who had not yet been impeached. He also contends that the trial court impermissibly allowed the government to create a prejudicial "drug atmosphere" at trial under the guise of "background" evidence.

### I

In early September 1987, undercover government agent D.C. Ramsey arranged to purchase an ounce of cocaine from Ray Samuel Dicks. Agent Ramsey had established a relationship with Dicks by purchasing drugs from him on several previous occasions. On September 3, Agent Ramsey gave Dicks $1500 with the understanding that Dicks would acquire the ounce of cocaine. Dicks allegedly acquired the cocaine from defendant Michael Bolick on September 8. Dicks in turn provided Agent Ramsey with the ounce of cocaine. At no time did Agent Ramsey have any direct contact with defendant Bolick.

The government's case against Bolick relied exclusively on the observations of three witnesses who were present when Bolick allegedly supplied Dicks with the cocaine for Agent Ramsey's purchase. Because he had no direct contact with Bolick, Agent Ramsey could provide no direct evidence against him. The three government witnesses were Ray Dicks, his wife Amy Blackburn Dicks, and Bartley Blackburn. The Dickses were charged as co-conspirators but were not tried with Bolick. Blackburn was not charged for any crime related to Agent Ramsey's purchase of the ounce of cocaine.

Ray Dicks, Amy Dicks, and Blackburn might well have worn signs saying, "Impeach me." Ray Dicks was to testify against Bolick in exchange for a seven year cap on his sentence for pending charges of sale and distribution of LSD and cocaine. At age 17 Dicks was convicted of a marijuana charge and burglary, serving a two and one-half year prison term. He has been convicted on three separate occasions for driving while intoxicated and has been convicted of at least five additional traffic offenses. He also has convictions for carrying a concealed weapon, and possibly for escaping from a Georgia penitentiary. All this in a 28–year lifetime. Amy Dicks had been "charged for shoplifting and [had] two DWI's." She was to testify against Bolick in exchange for a government recommendation that her sentence on pending charges not exceed four years. Blackburn's credentials begin with a federal parole violation. Blackburn had apparently been on probation for possession of a sawed-off shotgun when he was arrested for distribution of LSD. Blackburn also has suffered two convictions for breaking and entering, as well as convictions for destruction of private property and drunk driving. He also had charges pending for conspiring to sell acid and selling marijuana.

The controversy on appeal concerns the trial strategy adopted by the government which has the appearance of having been an attempt to minimize the unpalatability of its witnesses. Bolick's two allegations of error concern, specifically, the testimony of the first government witness, Agent Ramsey. Agent Ramsey began his testimony by recounting the manner in which

he established his relationship with Dicks. That testimony included mention of three occasions on which Dicks sold Agent Ramsey L.S.D. Agent Ramsey testified that he purchased from Dicks 1200 hits of L.S.D. for about $3,750. Bolick is not alleged to have been involved in those sales.

After testifying to his limited knowledge of events between giving Dicks the $1500 for the cocaine purchase on September 3 and receiving the cocaine on September 8, Agent Ramsey began describing discussions he had with the Dickses and Blackburn ("the declarants"). The discussions in question took place on two occasions (April 1988 and August 1988), after the Dickses had been charged and long after the alleged conspiracy involving Bolick and the Dickses was over. Agent Ramsey's description of what the declarants had told him was detailed, consuming about eighteen pages of transcript. Agent Ramsey described separately his discussions with each of the declarants.

Of greatest importance for our purposes was that the district court, over objection, allowed Agent Ramsey to testify that each of the declarants told him that it was Bolick who had supplied the ounce of cocaine that Agent Ramsey eventually purchased. Thus, before any of the declarants had taken the stand, the jury was informed three times by arrant hearsay that each of the declarants told Agent Ramsey that Bolick was guilty. In response to the first of the numerous objections by Bolick's counsel, the district court gave the jury the following instruction:

> Ladies and gentleman of the Jury, I will instruct you concerning [a] point of law—at this point, the testimony of this witness, concerning the transactions and discussions that he had with Mr. Ray Dicks, as to statements made by Mr. Dicks, will be taken by you not for the proof of what Mr. Dicks is said to have stated, but as corroboration of Mr. Dicks' testimony to come later in this case.

> It may seem like a southern [sic] distinction to you, but I want you to remember it and apply what I'm telling you; to your deliberation. That is, to repeat the point. The testimony being offered here as to what Mr. Ray Dicks said, is not being—shall not be received by you as statements for the proof of what Mr. Ray Dicks said to this witness. But if you later find that Mr. Dicks made the statements which this witness says he made, then you may receive this testimony as corroboration of what Mr. Ray Dicks later says that he said, if you find that it does in fact corroborate this testimony.

Bolick's counsel repeated his objection to Agent Ramsey's recitation of Amy Dicks' out-of-court statements at the time Agent Ramsey recounted them, although he did not do so for Agent Ramsey's testimony as to Blackburn's declarations. On each objection, the district court referred the jury to the instruction cited above.

After Agent Ramsey had testified, the government called each of the declarants as witnesses. The government elicited from each declarant the same testimony inculpating Bolick that Agent Ramsey had recited while on the stand. (There were slight variations between Amy Dicks' actual testimony and her declarations as presented by Agent Ramsey.) On cross-examination, Bolick's counsel tried to impeach each of the declarants. The only witness called by the defense was Bolick, who admitted going to the Dickses' residence, where the cocaine transaction took place, but denied selling the cocaine.

The jury convicted Bolick and he was sentenced to a six-year prison term and a $5,000 fine.

## II

We begin our analysis with Bolick's contention that the district court erred by allowing Agent Ramsey to recite each of the declarants' out-of-court statements inculpating Bolick before any of them had been impeached.

### A

Federal Rule of Evidence 801(d)(1)(B) provides that a prior statement is not hearsay if

the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

The government contends, and the district court instructed, that Agent Ramsey's testimony as to the declarants' prior consistent statements was not admitted for the truth of the matter asserted but for mere "corroboration," by which it presumably means "rehabilitation." There is considerable authority for the proposition that the requirements of Rule 801(d)(1)(B) must be met only when a prior consistent statement is offered for its truth and that general principles of trial court discretion apply when a prior consistent statement is admitted for some other purpose such as rehabilitation or background. *See, e.g., United States v. Mazza*, 792 F.2d 1210, 1215 (1st Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1290, 94 L.Ed.2d 147 (1987); *United States v. Pierre*, 781 F.2d 329, 333 (2d Cir.1986); *United States v. Rubin*, 609 F.2d 51, 66–70 (2d Cir.1979) (Friendly, J., concurring), *aff'd on grant of certiorari limited to other issue*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *United States v. Obayagbona*, 627 F.Supp. 329, 335–38 (E.D.N.Y.1985) (Weinstein, J.). *But see generally Pierre, supra* (discussing arguable split within Second Circuit law). Although we have not had occasion to address it squarely, we may have endorsed the proposition in *United States v. Parodi*, 703 F.2d 768, 785–86 (4th Cir.1983) (citing with apparent approval language from Judge Friendly's concurrence in *Rubin, supra*). *But cf. United States v. Henderson*, 717 F.2d 135, 138 n. 1 (4th Cir.1983) (indicating, in context of separate issue of whether Rule 801(d)(1)(B) requires absence of motive to fabricate at time prior consistent statement made, that *Parodi* should be read narrowly), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 238 (1984).

Fortunately, for purposes of our opinion, we can assume, without deciding, that the prior consistent statements were admitted as rehabilitation and that they are not subject to the requirements of Rule 801(d)(1)(B). Even with the benefit of such assumptions, the admission of the statements was erroneous because the admission preceded impeachment of the declarants. Although the legal support for our conclusion follows shortly, we note that the requirement that impeachment must precede rehabilitation should surprise no one. For how can one rehabilitate what has not yet been discredited? As Webster's instructs, to rehabilitate is "to restore to good repute by vindicating: clear of unjust or unfounded charges: reestablish the good name of." Webster's *Third New International Dictionary* 1914 (1976).

Although "the trial court has traditionally exercised the broadest sort of discretion in controlling the order of proof at trial," *Huddleston v. United States*, 485 U.S. 681, 688, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988) (rejecting argument that, under Fed. R.Evid. 404(b), trial court must make preliminary finding as to similar act evidence before such evidence is presented to jury), a trial court's decisions on such matters are not immune from review. Close scrutiny is particularly appropriate when a trial court departs from established practices. We think that was the case here. For "one general principle, operative under both case law and the Federal Rules of Evidence, is that in the absence of an attack upon credibility no sustaining evidence is allowed." *McCormick on Evidence*, § 49, at 115 (3d ed. 1984) (and cases cited therein); *accord* J. Weinstein and M. Berger, *Weinstein's Evidence*, ¶ 607[08], at 607–111–12 (1989) (and cases cited therein). We are among the courts to adhere to that time-honored principle. *See Henderson*, 717 F.2d at 137 ("As a general rule a witness's credibility may not be rehabilitated unless it first has been challenged;" citing Fed.R.Evid. 608(a)(2)); *see also United States v. Porter*, 821 F.2d 968, 974 (4th Cir.1987) (citing with approval *United States v. Hilton*, 772 F.2d 783, 786 (11th Cir.1985), where the "fundamental evidentiary principle [that] evidence of a witness' truthful character is

admissible only after character for truthfulness has been attacked" required the conclusion that "when the bolstering testimony goes to the character for truthfulness of the only witnesses to repudiate the defendants' claim, admission of such testimony is also reversible error."), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). Thus, even under general principles of rehabilitation evidence, wholly apart from any considerations of Rule 801(d)(1)(B), the district court's admission of the statements prior to any attack on the declarants' credibility was improper.

Moreover, in addition to affirming the *general* principle that impeachment must precede rehabilitation, our cases have long recognized that principle in the *specific* context presented here: rehabilitation by prior consistent statement prior to impeachment. *See United States v. Weil*, 561 F.2d 1109, 1111 (4th Cir.1977) ("Corroborative testimony consisting of prior, consistent statements is ordinarily inadmissible unless the testimony sought to be bolstered has first been impeached."); *United States v. Leggett*, 312 F.2d 566, 572 (4th Cir.1962) ("The decisions following the established rule are in agreement in holding that proof of prior consistent statements is not admissible unless and until there has been some impeachment of the witness ... and that they cannot be shown as a part of the evidence in chief."); *Schoppel v. United States*, 270 F.2d 413, 417 (4th Cir.1959) ("Where a cross-examiner has endeavored to discredit a witness by prior inconsistent statements, it is sometimes permissible to offset the damage by showing prior consistent utterances. It is not proper, however, in chief to seek corroborative support of a witness by showing that after the event under inquiry and before the trial he made statements to the same effect.") (citations omitted).

The government can seek no refuge in the fact that a limiting instruction from the court accompanied the prior consistent statements. As noted above, the district court instructed the jury as follows:

Ladies and gentleman of the Jury, I will instruct you concerning [a] point of law—at this point, the testimony of this witness, concerning the transactions and discussions that he had with Mr. Ray Dicks, as to statements made by Mr. Dicks, will be taken by you not for the proof of what Mr. Dicks is said to have stated, but as corroboration of Mr. Dicks' testimony to come later in this case.

It may seem like a southern [sic] distinction to you, but I want you to remember it and apply what I'm telling you; to your deliberation. That is, to repeat the point. The testimony being offered here as to what Mr. Ray Dicks said, is not being—shall not be received by you as statements for the proof of what Mr. Ray Dicks said to this witness. But *if you later find that Mr. Dicks made the statements which this witness says he made, then you may receive this testimony as corroboration of what Mr. Ray Dicks later says that he said, if you find that it does in fact corroborate this testimony.*

As the emphasized portion shows, the instruction is critically incomplete. The instruction does distinguish between the concept of acceptance for the truth of the matter asserted and acceptance as corroboration and it does recognize the need for the prior statement to be consistent with the declarant's subsequent testimony. However, the instruction omits mention of the crucial and dispositive factor: it does not instruct the jury that it may consider the statements *only if the declarant is subsequently impeached by defense counsel.* The admission of the evidence, therefore, cannot be defended by means of the ostensibly precautionary instruction given below. *Cf. Leggett*, 312 F.2d at 571 (court finds ambiguity and inadequacy in instruction that informed jury it could consider evidence for purpose of corroboration, "if you find that it does corroborate" the declarant).

The very understandable difficulty that the district court faced in formulating the instruction is reflective of one of the reasons supporting the traditional requirement that actual impeachment must precede the use of prior consistent statements for rehabilitation. We have great difficulty believ-

ing that a jury can appreciate the distinction, in this context, between substantive evidence and rehabilitative evidence. If admitted as substantive evidence, the declarations would tend to show that Bolick was guilty. If admitted as rehabilitation, the declarations would tend to show that the declarants were telling the truth when they said that Bolick was guilty. If Bolick's jury consisted of anything less than the fathers of modern philosophy, even a technically correct instruction probably would not have prevented the jury from overlooking the fine distinction between the two uses of the evidence and the jury probably would have used Agent Ramsey's testimony as direct evidence of Bolick's guilt. *See New Mexico v. Lucero*, 109 N.M. 298, 784 P.2d 1041, 1046 (1989) (expressing the same belief and commenting that asking a jury to recognize the distinction "would be like asking a jury to consider a defendant's confession, not for the truth but only [for the fact] that he made it.") That inherent high risk of prejudice animates our conclusion that the search for comfort from the court's instruction is fruitless.

If the impeachment had occurred first, the district court could have simply instructed the jury to accept Agent Ramsey's testimony as rehabilitation of the declarants' testimony and not as substantive evidence. Instead, the district court had to tell the jurors to wait until the declarants testified before deciding what to do with the declarations. It seems excessive to ask even the conscientious juror, who is probably still trying to absorb the distinction between prior consistent statements as substantive evidence and such statements as rehabilitation, to condition registration in his mind of each of the declarations on whether the declarant ultimately so testified and whether defense counsel subsequently impeached.

Given that the district court veered off of a well-paved road, we accord it considerably less deference than would usually be the case, and we conclude that the admission of the prior consistent statements before impeachment was error, even if the statements were offered only for rehabilitation.

## B

■ Although we have concluded that admission of the prior consistent statements before impeachment was error, we must determine whether such error requires reversal. Courts that have found error in situations such as the one before us have carefully scrutinized the evidence at trial, and on occasion have concluded that the district court's error was harmless. However, because the district court's error actually and substantially prejudiced Bolick's case and the considerations that have led other courts to excuse such error are here absent, we conclude that Bolick's conviction must be reversed.

Two key facts influence our assessment of the harm to Bolick's case resulting from the district court's error. First, the government's *entire* case against Bolick consisted of the declarations to which Agent Ramsey improperly testified, namely, the declarants' statements that Bolick supplied the cocaine. Agent Ramsey himself had *no* first hand knowledge of Bolick's involvement. Second, the character for veracity of the declarants was extremely doubtful. Those facts indicate that admission of the declarations was damaging in three ways. First, Agent Ramsey's testimony doubled the number of times the jury heard that Bolick "did it;" second, the fact that the declarations emanated from the mouth of a law enforcement officer with no discreditable record lent an appearance of credibility to the declarations that would have otherwise been absent; and, third, Bolick was deprived of the opportunity to cross-examine the declarants immediately upon the appearance (through Agent Ramsey's recitation) of the declarations because the declarants were not yet on the witness stand. In short, before the government had put on the first witness that was to supply inculpatory evidence, the jury had been told three times, by a credible witness, in statements that were effectively immune from cross-examination, that Bolick was guilty.

In *Mazza, supra*, the district court had allowed two government agents to describe

"strongly incriminating" statements that a government witness had made to them before the government witness testified at trial. 792 F.2d at 1215. The defendants complained that the effect of the agents' testimony was to allow the government to present its case against the defendant three times (once from the declarant/witness and once from each of the two agents). *Id.* The defendants argued that the government witness in question was highly untrustworthy and the government therefore had gained an unfair advantage at trial. *Id.* In concluding that "both reason and authority indicate the appellants are right about the inadmissibility of the challenged testimony of the government agents," even though the statements were admitted only for background, *see id.* at 1215, the First Circuit pointed to three considerations, two of which help to illustrate the harm to Bolick in this case. First, the amount of out-of-court statements was large. As in this case, the *Mazza* witness' statements "pervaded the direct examination of the government agents." 792 F.2d at 1215. As in this case, "the government effectively managed to have the jury hear a second-hand account of [the witness'] entire story through witnesses whose credibility the jury was less apt to question." *Id.* Although Agent Ramsey did not present each of the declarants' entire story, he presented much of it and, in particular, the crucial claim that Bolick sold the cocaine. Second, the *Mazza* court found a high risk that the out-of-court statements would sway the jury because the testimony might have shown facts not later corroborated and "would also likely bolster the credibility of the informer ... before he took the stand." 792 F.2d at 1215. *See also United States v. Mancillas*, 580 F.2d 1301, 1309–10 (7th Cir.) ("to allow testimonial repetition of a declarant's out-of-court charge that the defendant would engage or was engaged in specific criminality would seem to create too great a risk that [prejudice will outweigh probative value.] That risk cannot be justified simply to set forth the background of the investigation."), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). In logic that applies equally to this case, the *Mazza* court wrote that "the jury was particularly likely to consider these out-of-court declarations for their truth, for they directly implicated the defendants in the specific acts at issue." 792 F.2d at 1215–16. We find insightful the *Mazza* court's assessment of the effect of the wrongly admitted evidence and we think that Bolick was similarly harmed by the admission of the prior consistent statements here at issue.

Keeping in mind the harm done by admission of the evidence, we now examine the record to see if other events at trial cured the harm Bolick suffered. We draw guidance from *Mazza*, where the court carefully compared the substance of the improperly admitted evidence with other corroborating evidence. 792 F.2d at 1217–21. In *Mazza*, for three of the declarations, one of which was corroborated by a tape recording and another of which was corroborated by first hand testimony of another government agent, the court was "satisfied that the admissible testimony *overwhelmingly* established the defendants' guilt, and [the court was] therefore *virtually certain* that admission of the agents' improper testimony ... did not affect the jury's judgment." *Id.* at 1221 (emphasis added). As to four other such declarations, the *Mazza* court was troubled but nonetheless affirmed because "the tape recordings and other independent evidence [other than the contents of the witness' testimony recounted by the government agents] presented an *overwhelming* case." *Id.* (emphasis added). Similarly, in *Mancillas, supra,* reversal was not required because each portion of the improperly admitted prior consistent statement was corroborated by evidence other than the same statement later being uttered by the declarant. *See* 580 F.2d at 1310–11. Our approach has been generally the same. *See Leggett,* 312 F.2d at 573 (error not harmless because evidence at trial was in conflict and improperly admitted declarations corroborated one version of the evidence); *see also Porter,* 821 F.2d at 974 (error harmless in large part because "the evidence of guilt was sufficient without [the witness'] testimony [and the witness'] evi-

dence was corroborated"); *Schoppel*, 270 F.2d at 417 (in context of eleven-day proceeding, court found error harmless because it was "left with the firm conviction that no actual injury has been done to the defendant's substantial rights").

Applying these cases, we find that nothing in the subsequent proceedings cured the harm caused by the trial court's error. If the improper declarations are extirpated from the record, the evidence against Bolick becomes far short of that necessary to support a conviction. Even if we were to excise only Agent Ramsey's testimony, thereby allowing the declarants' subsequent inculpatory statements to remain, the dubious character of the declarants still would prevent us from comfortably concluding that Bolick would have nonetheless been convicted.

Nor is the government's case saved by the fact that the declarants were eventually impeached by Bolick's counsel. The cases in which courts have found error to be harmless due to subsequent impeachment are distinguishable. *See United States v. Lopez*, 584 F.2d 1175, 1180 (2d Cir.1978) (distinguishable on grounds that (a) court based affirmance in part on presence of other incriminating evidence and (b) absence of objection below prompted court to apply the plain error standard of review); *United States v. Simmons*, 567 F.2d 314, 321–22 (7th Cir.1977) (distinguishable on grounds that improper hearsay was in form of prosecutorial statement during opening argument which court ordered stricken and later admitted after impeachment, unlike the ongoing condoned procedure in Bolick's case). In *United States v. Smith*, 746 F.2d 1183 (6th Cir.1984), where the declarant testified and was impeached on cross examination, the court observed that the prior consistent "statement was introduced *before* the witness making it had even taken the stand. Under these circumstances, the prior-consistent-statement exception simply cannot apply." *Id.* at 1185 (emphasis in original).

Application to our case of the *Smith* court's refusal to excuse improper admission of a prior consistent statement on the grounds of subsequent impeachment makes sense for two reasons. First, as noted above, the manner in which the evidence was presented allowed the government unfairly to establish Bolick's guilt in the minds of the jurors before any of the declarants had testified. More generally, particularly where, as here, the prior consistent statement is being used against a criminal defendant, affirmance on the basis of subsequent impeachment would present defense counsel in subsequent cases with a choice they should not be forced to make. In such situations, defense counsel would have to choose between impeaching the witness (thereby increasing the likelihood of a favorable jury verdict but decreasing the likelihood of success on appeal) or not impeaching the witness (thereby decreasing the likelihood of a favorable jury verdict but increasing the likelihood of success on appeal). Such inconsistency of incentives for defense counsel also needlessly creates a tension between the system's interests in, on the one hand, just results, and, on the other hand, avoidance of manufactured appeals. Although defense counsel routinely must make tough tactical choices, we will not adopt a rule that condones putting the defense in such a predicament by virtue of a prosecutorial trial tactic that is acknowledged to be improper. Where the preventative medicine is as simple as requiring that the proponent of a prior consistent statement wait until the declarant has been impeached, we see no reason to excuse failure to comply with what is a simple rule on the grounds of subsequent impeachment. *But cf. Simmons*, 567 F.2d 321–22 (subsequent impeachment "was a tactical decision made by the defendant by which he assumed the risk of the Government's rebuttal").

We have previously indicated our preparedness to vacate convictions where the government has improperly relied upon out-of-court statements, particularly when those statements effectively establish the defendant's guilt. *See, e.g., United States v. Brown*, 767 F.2d 1078 (4th Cir.1985). We also have previously indicated that impeachment should precede prior consistent statement rehabilitation. In *Mazza*, in

summing up its exhaustive review of the evidence to determine whether the improper admission of prior consistent statements was reversible error, the court described its "results in detail, in part to show precisely how inadequate care in the conduct of a trial can convert an overwhelmingly strong prosecution case into a difficult issue on appeal." 792 F.2d at 1217. Here, the prosecution case was considerably less than overwhelming. The concerns, in any event, are far broader and more general than the concerns merely of the instant case. Accordingly, the conviction of Michael Bolick must be reversed.

### III

Bolick also argues that the district court committed reversible error by permitting Agent Ramsey to testify that Ray Dicks had sold L.S.D. to Agent Ramsey on three prior occasions. Bolick complains that the testimony created a "drug atmosphere," which unfairly prejudiced him by causing the jury to associate him with numerous drug sales in which he was not in fact involved.

Since the case must be reversed and remanded for a new trial for the foregoing reasons, and the resolution of the issues involved on the second point is shrouded in doubt, we take no stand on a matter which may not arise on trial, or arise in a substantially different setting. Sufficient to the day is the evil thereof.

Sufficient thereto, the evil thereof also applies to Bolick's contention that the cumulative effect of the testimony deprived him of a fair trial.

### IV

For the foregoing reasons, the decision of the district court is

REVERSED AND REMANDED FOR A NEW TRIAL.

DONALD RUSSELL, Circuit Judge, dissenting:

I dissent. In so doing, I accept generally the factual statement as provided in the majority opinion and shall confine myself to the two grounds of error argued by the appellant Bolick with only such additional facts as may be required for an understanding of the legal reasons for dissent.

The defendant has raised by his appeal only two grounds for reversal. Both grounds involve evidentiary rulings made by the district judge in the course of trial. I shall address the two grounds separately.

### I

The defendant's first ground of alleged error is the admission of Ramsey's testimony of three sales of L.S.D. by Dicks, a primary witness against the defendant, to Ramsey, the undercover officer. It was admitted that the defendant was not involved in those transactions and the government disclaimed any purpose in offering the evidence to prove involvement of the defendant in the L.S.D. sales. Instead, it declared categorically that the evidence was offered solely to establish the circumstances under which Ramsey established his initial relationship with Dicks, a relationship which led subsequently to Dicks' sale of the cocaine to Ramsey. This evidence was admitted by the district judge as strictly "background" evidence, qualifying as "relevant evidence" under the broad definition of that term in Rule 401 of the Rules of Evidence.

At the outset, it is questionable whether this particular claim of error is properly before us. At trial, the defendant entered only a general objection to the admission of the evidence now considered; he made no effort to specify any grounds for his objection to the evidence. Fed.R.Evid. 103(a)(1), however, provides that "[e]rror may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected and ... in case the ruling is one admitting evidence a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context...." The defendant failed to specify the grounds of his objection to this evidence. In his brief he concedes that he offered only a "general objection" to the admission of this evidence. Such failure to

specify is generally fatal to the objection on appeal. *United States v. One 1971 Mercedes Benz,* 542 F.2d 912, 915 (4th Cir. 1976) ("Questions not raised and properly preserved in the trial forum will not be heard on appeal, in the absence of exceptional circumstances."); *Bituminous Const. Co. v. Rucker Enterprises, Inc.,* 816 F.2d 965, 969 (4th Cir.1987); *United States v. Piva,* 870 F.2d 753, 759 (1st Cir. 1989); *United States v. Steel,* 759 F.2d 706, 712 (9th Cir.1985); *United States v. Hutcher,* 622 F.2d 1083, 1084 (2d Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980); *Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 722–24 (8th Cir. 1976). The Rule, however, provides an escape from this requirement. It relieves the failure to specify if the ground for the objection was "apparent from the context." The defendant seeks to avail himself of this "escape hatch" for his failure to specify the grounds of his objection in this case. This exception to the requirement of specificity is generally applicable if on the face of the record itself it is clearly obvious what the objection was. An excellent illustration of the situation which qualifies under this exception is *Werner v. Upjohn Co.,* 628 F.2d 848, 853 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981). The court there said:

> Plaintiff argues that the defendant waived any objection along this line because it failed in its objection to state specifically the grounds for objection as required by Federal Rule of Evidence 103(a)(1). Rule 103(a)(1), however, requires specific objection only where the specific ground would not be clear from the context. In the case at bar, Upjohn, for example, had already filed a pre-trial motion with supporting memoranda asking that all references to the 1975 warning be suppressed. From our examination of the record, we have no doubt that the ground for objection was clear to everyone.

*See also Palmerin v. City of Riverside,* 794 F.2d 1409, 1413 (9th Cir.1986). I do not have a situation where the ground of objection is clear in the context of the case and the defendant may not therefore avail himself of the exception provided by subsection (a)(1) as an excuse for his failure to specify the grounds of his objection of this evidence. Such failure normally would warrant our disregarding this objection, since the objection was manifestly not well preserved. But the evidence unquestionably establishes that the evidence was admissible as "background" evidence. I choose, therefore, relying on Rule 801(c), Fed.R.Evid., to base our decision dismissing this claim of error on the merits.

"Background" evidence clearly qualifies as relevant evidence under the definition of such term as provided by Rule 401, Fed.R. Evid. "Relevant Evidence" as defined in Rule 401 is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Advisory Committee Notes to Rule 401 add more specifically:

> The fact to which the evidence is directed need not be in dispute.... *Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.*

(Emphasis added.) Weinstein on *Evidence* § 501[05], Vol. 1, p. 401–29 (1989 ed.), states directly that "[e]vidence that serves as background information about persons, subjects and things in a trial is generally admissible although it may not relate to a consequential fact." The trend of the decisions which support such application of the Rule as it relates to background evidence is well illustrated by the decision in *United States v. Daly,* 842 F.2d 1380, 1388 (2d Cir.1988), where the court said:

> Independent of the matter of expert testimony, the trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation

of the understanding or intent with which certain acts were performed.

The rule as declared in *Daly* has been applied in repeated decisions both as against a hearsay objection and against a claim that such evidence is violative of the principle proscribing proof of other crimes. Our own case of *United States v. Love*, 767 F.2d 1052, 1063–64 (4th Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 849, 88 L.Ed.2d 890 (1986), is representative of these cases in which the admissibility of such evidence has been sustained against a hearsay objection. In that case, a DEA agent testified to an investigation concerning drug trafficking in several states and Colombia. In his testimony he detailed the circumstances of the investigation leading up to the defendant's arrest. In particular, he sought to explain on the basis of information received by him from another DEA agent in Miami how he was present at the spot where delivery of the contraband was made and the defendant arrested. The defendant objected to this evidence as hearsay. The government responded that the information had been offered and received "for the limited purpose of explaining why a government investigation was undertaken" and not for the truth. As such it was admissible background evidence and was not hearsay under Rule 801(c),[1] Fed.R. Evid. This court agreed, saying:

> In this case, Shumard's testimony was offered not for its truth but only to explain why the officers and agents made the preparations that they did in anticipation of the appellants' arrest. As such, it was not inadmissible hearsay. *See United States v. Mancillas*, 580 F.2d 1301 (7th Cir.), *cert. denied*, 439 U.S. 958 [99 S.Ct. 361, 58 L.Ed.2d 351] (1978) ("Whether or not the ... statement was true, the fact that it was made would surely explain the flurry of investigative activity in three states the jury was soon to hear about. For this purpose, outlining the background of the investigation with the evidence not being offered to prove its truth, it could be said not to be nonadmissible as hearsay." (citations omitted)).

767 F.2d at 1063–64.

Other decisions have adopted the reasoning of *Love* in sustaining the admission of background testimony against a hearsay objection. In *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir.1987), for instance, the defendant had been arrested for passing counterfeit federal reserve notes. The arrest was based on information from a Kansas City police officer that

> a reliable source had information regarding Martin and Grady passing counterfeit money; he met with the informant who related that Martin and Grady had been passing counterfeit bills in other states; officers in other states verified that counterfeit $100 bills had been passed in their states on the weekend related by the informant. Agent McNerman also testified that the informant related that Martin and Grady planned to meet with an unknown white male from another state on the weekend of December 27, 1985, for the purpose of passing counterfeit money. A surveillance of Martin and Grady established their meeting with Freeman. They were subsequently arrested for possession and distribution of counterfeit federal reserve notes.

At trial and on appeal the defendant Freeman objected on hearsay grounds to the out-of-court statements of the confidential informant, who apparently did not appear at trial or testify. The district court found the statements were admissible, and the Tenth Circuit affirmed that ruling, holding that out-of-court statements "are not hearsay when offered for the limited purpose of explaining why a government investigation was undertaken." 816 F.2d at 563. In reaching this conclusion the court cited with approval, quoted at length from, and followed our decision in *Love*. *Id.*

The defendant relies on *Brown v. United States*, 767 F.2d 1078 (4th Cir.1985), as

---

1. Rule 801(c), Fed.R.Evid., defines "hearsay" as "a statement ... offered in evidence to prove the truth of the matter asserted."

supporting its contention that this evidence was inadmissible as background evidence. I am of the opinion that this case actually supports the government's position. In that case, the defendant was charged with the theft of 28 cases of frozen shrimp from the United States Naval Station at Norfolk, Virginia. The investigation of the case had been assigned to an FBI agent. During the agent's testimony at trial, the government offered through the testimony of the agent six separate statements taken by the agent. Two of these statements, one by an unidentified informant and the other from the driver of the truck found with the stolen shrimp, covered some details of the investigation which did not identify the defendant with the evidence given. The first of these statements included a description of the truck which was hauling the stolen shrimp away from the station and the second gave details of the discovery of the shrimp "hidden behind some eggs" after the driver of the truck had been stopped. The other four statements definitely identified the defendant and connected him ultimately with the theft. The defendant objected to the introduction of all six statements as inadmissible hearsay. The district judge overruled the objection as to the first two statements. This appeal followed. The court found in disposing of the appeal that the first two statements were admissible background evidence and, as such, not hearsay. Thus, the court said:

> The first of the statements, that the informant told Tonneson that stolen shrimp would be arriving at the gate in a truck which was described, did not connect Brown with the theft and might well be admissible as background even as hearsay. Certainly standing alone it would not be reversible error absent strained circumstances not present here. The same may be said of the second statement although it proved details of the finding of the shrimp by incompetent evidence.

On the other hand, the court found the other statements were not admissible as background evidence. These statements were said by the court to represent inadmissible hearsay "offered in evidence to prove the truth of the matter asserted."

It is manifest that the statement in this case was permissible background evidence similar to that involved in *Brown* which we found to be admissible background evidence. The challenged statement in this case, as recounted by Ramsey, did not purport to connect the defendant to the L.S.D. sales by Dicks; in fact, the government conceded that fact at the outset. The evidence was offered merely to explain how Dicks and Ramsey began their relationship. The ruling in *Brown* was similar in principle to the ruling of the district judge in this case. The evidence here was not inadmissible hearsay but was admissible background evidence.

The defendant also objects that evidence of other crimes—particularly crimes with which the defendant had no connection—is not permissible as background evidence. There is ample authority, however, for the admission of evidence of other crimes as background evidence. Rule 404(b) expressly allows admission of "all evidence of other crimes relevant to an issue in a trial, except that which tends to prove only criminal disposition." In *United States v. Masters*, 622 F.2d 83 (4th Cir.1980), this court, relying on that rule, sustained the admission of evidence of other crimes as background testimony, saying in that regard:

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae' " or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other ... [and is thus] part of the res gestae of the crime charged." And where evidence is admissible to provide this "full presentation" of the of-

fense, "[t]here is no reason to fragmentize the event under inquiry" by suppressing parts of the "res gestae." As the Court said in *United States v. Roberts*, (6th Cir.1977) 548 F.2d 665, 667 *cert. denied*, 431 U.S. 920 [97 S.Ct. 2188, 53 L.Ed.2d 232] "[t]he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge." 622 F.2d at 86 (citations and footnotes omitted).

An instructive case along this same line and reaching the same conclusion as *Masters* is *United States v. Williford*, 764 F.2d 1493 (11th Cir.1985), in which the defendant was charged with importing large quantities of marijuana. The primary witness for the government's case was a government informant. This informant "orchestrated a meeting between the Willifords and an undercover agent to negotiate a possible sale [which never resulted] of a kilogram of cocaine for $57,000." *Id.* at 1496. The government offered evidence of this negotiation, even though the defendant was not charged with possession or distribution of cocaine. The defendant objected to the admission of such evidence. He urged that the evidence was admissible only on the issue of intention and that, since he had stipulated intent, the evidence should have been stricken. The government contended on the other hand, that it had refused to join in the stipulation, thus leaving intent as an issue in the case. The defendant responded that the government was without authority to refuse consent to defendant's stipulation of intent. The court recognized that there were "two lines of cases" on "whether a defendant may force the government to accede or the court to accept the stipulation such as that involved here." *Id.* at 1498. The court, however, reasoned that it need not "reconcile the tension between these two lines of cases" because "[t]he evidence of the cocaine negotiation was properly admitted to explain the story of the crime" (*i.e.*, as background evidence). Its rationale for this conclusion was:

Evidence of an uncharged offense arising from the same series of transactions as charged is not an extrinsic offense within Rule 404(b).... Evidence, not a part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*Id.* at 1498–99.

Another instructive case is *United States v. Brennan*, 798 F.2d 581 (2d Cir. 1986), *cert. denied*, — U.S. —, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989), in which a New York Supreme Court judge was convicted of bribery, interstate travel in aid of racketeering, wire fraud and extortion. The government offered evidence at trial to corroborate the testimony of Bruno, the only witness to provide direct evidence of payments to Brennan for the purpose of corrupting the decision in a substantial number of cases. The government introduced at trial three instances of judicial obstructions not charged in the indictment in order "to complete the story of the crimes charged" as background evidence. *Id.* at 589. The defendant objected to the evidence; in particular, he objected to the evidence of other instances of judicial obstruction than those stated in the indictment as evidence of "other crimes." Basing its decision on Rule 404(b), Fed.R.Evid., the court found no error in the admission of the evidence of other crimes as background testimony under the circumstance. It said:

The trial judge has broad discretion to admit "other crimes" evidence under Rule 404(b), and he will not be overturned on appeal absent abuse of discretion. [*U.S. v.*] *Harris*, 733 F.2d [994] at 1006–07 [ (2nd Cir.1984) ]. "Other crimes" evidence may be admitted to complete the story of the crimes charged. In *Harris*, for example, evidence of the defendant's prior narcotics dealing with a witness was admitted to inform the jury of the background to the charged con-

spiracy and to show the basis for the defendant's trust of the witness.

798 F.2d at 589–90.[2]

See, to the same effect, United States v. O'Leary, 739 F.2d 135, 136–37 (3d Cir. 1984), cert. denied, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 776 (1985); United States v. Hoffer, 869 F.2d 123, 126 (2d Cir.), cert. denied, —— U.S. ——, 109 S.Ct. 2440, 104 L.Ed.2d 996 (1989); United States v. Bloom, 538 F.2d 704, 707 (5th Cir.1976), cert. denied, 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977).

The defendant has cited United States v. Vaught, 485 F.2d 320 (4th Cir.1973), as supporting his position. I do not find Vaught apposite here. In Vaught, there was a four-count indictment charging conspiracy to distribute heroin. The counts identifying the specific heroin sales supporting the conspiracy charge in Count I were three: two of the supporting counts (Counts II and III) charged only Gore with the crime of heroin distribution on December 7, 1972, and the third of the supporting counts (Count IV) charged the three named in the indictment as participants (Lee, Vaught, and Gore) in the sale on January 25, 1972. Prior to trial, Gore had plea bargained with the government to plead guilty to Count III (the December 2 sales) in return for the government's agreement to nolle prosequi all other counts of the indictment against him. Later, at trial, all the evidence involving the sales of heroin on December 2 was admitted into evidence in the trial against Vaught and Lee under the principle that anything said or done by a co-conspirator during the exercise of the conspiracy is admissible against all members of the conspiracy. The court found that this evidence was not "error in itself since the judge may, in his discretion, permit the introduction of evidence as to things said and done by an alleged co-conspirator subject to being connected up and followed by evidence of the existence of the conspiracy." But the problem was that "there was no evidence that Lee and Vaught conspired with Gore in the December sales of heroin," 485 F.2d at 392 n. 2; in short, the government failed to connect the evidence of the December sales with any conspiracy in which Vaught and Lee were involved. Absent that proof, the "great mass" of testimony including "acts and words of an alleged co-conspirator prior to the actual formation and existence of a conspiracy was irrelevant" and prejudicial to the defendants Lee and Vaught. Moreover, the only purpose of the introduction was to prove the truth as set forth in the statement. The case was accordingly reversed because of this improper admission of the acts and statements of an alleged co-conspirator in the absence of proof of the existence of a conspiracy and because it was offered for the truth of the statements. That situation is not analogous to the situation here where the admission was admitted not for its truth but merely as background evidence.

In the light of these authorities both from our own circuit and from other circuits it is manifest that the evidence here was properly admitted, provided it can be said that the probative value of such background evidence was not "substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." Fed.R.Evid. 403. As I have already indicated, the only prejudices allegedly caused by the introduction of this background evidence, as stated by the defendant, was that it "create[d] a drug atmosphere" in the case and "created a situation where defendant [Bolick] was associated with drugs." The defendant was not unfairly prejudiced by this proof for two reasons. First of all, the charges against the defendant and Dicks involved "drugs"; thus, it was inevitable that there would be a "drug atmosphere" in such a case. Second, it was precisely the defense's strategy to impeach the testimony of the Dickses by emphasizing the criminal activities, espe-

---

2. Several years after the decision at 798 F.2d 581, the defendant sought habeas relief in connection with the wire fraud conviction under McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The court sus- tained the attack on the wire fraud counts but reaffirmed conviction on all other counts. Brennan v. United States, 867 F.2d 111 (2d Cir.), cert. denied, —— U.S. ——, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989).

cially in drugs, of the Dickses. Moreover, the proof of this evidence was the main burden of the defendant's cross-examination of the Dickses. Proof of Ray Dicks' sale of L.S.D. to Ramsey fits perfectly into such picture. I am unable to see how the L.S.D. evidence could be said to have prejudiced the defendant in his defense and especially his theory of defense in any way. The evidence blackened the record of Dicks, the chief witness against the defendant. To that extent it supported the defendant's theory of defense. We, therefore, find no abuse of discretion on the part of the district judge in admitting such evidence.

The majority opinion sidesteps ruling on the admissibility of this "background" evidence because, it declares, the government may at retrial not choose to offer such testimony or its admission may arise "in a substantially different setting." I see no reason why, even if the conviction is to be reversed for a new trial, we should refuse to rule on the admissibility of this evidence. It is unfair to the district judge trying the remanded case and to the parties that the admissibility of this evidence should be left dangling in limbo. The trial judge and the parties should not be required to guess on the admissibility of the evidence. The point has been presented to us by the parties in their briefs and in their oral argument. A ruling by us on this question at this time would avoid a reargument on this point at trial and, perhaps, on a second appeal here. We have often recognized that a ruling on a point such as this, even though there is to be a retrial, will prevent confusion and unnecessary reargument on retrial and have, therefore, ruled on the admissibility of the challenged evidence, even though the case is being reversed and remanded for retrial on another point. I think we should follow this rule here and decide the question of the admissibility of this background evidence.

**II**

The defendant's second evidentiary claim of error was directed at the conditional admission of Ramsey's testimony that Dicks told him that the defendant was the source of the cocaine which Dicks sold to Ramsey. Though perhaps it might be argued that this evidence is admissible as background testimony establishing the full story of the investigation herein, *see Masters, supra,* the government does not premise its admissibility on that ground. The testimony was offered as corroborative evidence of the later testimony of the Dickses, who were to testify immediately after Ramsey.[3] The defendant objected to the introduction of that evidence in corroboration, though the agreed appendix does not set forth the specific ground on which the defendant objected. It can fairly be said that the ground of the objection was evident in the context at the time the evidence was offered. The district judge admitted the evidence purely as corroborative evidence conditioned on or subject to the government linking such evidence with other evidence satisfying the requirements for the admission of such evidence. He stated that, unless the government later presented evidence that would permit the ultimate introduction of the corroborating evidence, he would order it stricken and would instruct the jury to disregard it. After Ramsey's testimony, both Ray and Amy Dicks testified. Again, so far as the agreed appendix shows, there was no motion by the defendant to strike Ramsey's testimony corroborating the Dickses' testimony on this source for the cocaine on the ground that the government had failed to satisfy the condition on which the district judge had tentatively admitted this corroborative evidence.

It has long been established that prior consistent statements in corroboration of the testimony of the declarant may be admitted (1) if the declarant has testified and been subject to cross-examination,[4] (2) the

---

**3.** I do not discuss Blackburn's statement since the defendant did not object to its introduction.

**4.** Implicit in this basis for qualification for the introduction of corroborative evidence is that

Corroborative testimony consisting of prior, consistent statements is *ordinarily* inadmissible unless the testimony sought to be bolstered has first been impeached.

statement is consistent with the witness' in-court testimony, (3) the witness has been impeached for credibility, fabrication or improper influence or motive, and (4) the prior consistent statement was made before any "offer of leniency." Annotation, 58 A.L. R.4th 1014; McCormick on *Evidence*, 640 (1972 ed.); *United States v. Stamey*, 423 F.2d 1223 (4th Cir.1970); *United States v. Henderson*, 717 F.2d 135, 138 (4th Cir. 1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 238 (1984). There are, it is true, some differences in the decisions on the admissibility of prior statements of witnesses made after an "offer of leniency" has been made, if the statement is offered for the limited purpose of corroboration and not as proof of truth. In *United States v. Harris*, 761 F.2d 394, 399 (7th Cir.1985), a case illustrative of the view that such evidence is admissible, the court said that "this condition [*i.e.*, the motive to fabricate must not have existed at the time the statements were made] need not be met to admit into evidence prior consistent statements which are offered solely to rehabilitate a witness rather than as evidence of the matters asserted in those statements." This accords with the concurring opinion of Judge Friendly in *United States v. Rubin*, 609 F.2d 51, 66 (2d Cir.1979), *aff'd. on other issues*, 449 U.S. 424, 428, 101 S.Ct. 698, 700, 66 L.Ed.2d 633 (1981). However, in *United States v. Henderson*, *supra*, we held that the corroborating statement must have preceded any motive to fabricate. *But in that case the statement was offered as substantive evidence and not merely for corroborative or rehabilitating purposes.* I find no point, however, in pursuing this question which has been exhaustively reviewed by Judge Newman in *United States v. Pierre*, 781 F.2d 329, 330–33 (2d Cir.1986), and by the court in *United States v. Piva*, 870 F.2d at 759 n. 4, *i.e.*, whether absence of motive to fabri-

cate will foreclose introduction of such a statement if it is offered not for proof of the truth of the statement but purely as corroborative proof of same,[5] since, as I indicate later, the evidence here shows clearly that the statements involved preceded any "offer of leniency."

It accordingly appears clear that all the conditions for the admission of prior consistent statements in this case were established except for the requirement that the corroboration be subsequent to the testimony of the witness whose testimony is to be corroborated. As a matter of fact, the majority opinion seems to concede that all the requirements for the admission of this corroborating evidence were present and that the only reason the evidence was inadmissible was "because the admission preceded impeachment of the declarants."

And the record amply supports this "assumption" by the majority opinion that all the requirements for establishing the admissibility of the corroborative evidence were established. Impeachment evidence may be either express or implied. *United States v. Baron*, 602 F.2d 1248, 1253 (7th Cir.), *cert. denied*, 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979). Moreover, as the annotation in 47 A.L.R.Fed. 639–651 said:

> While admissibility thus depends initially on an attack upon a witness' credibility in an attempt to show such recent fabrication, the courts have taken a generous view of the entire trial setting in determining whether there was sufficient impeachment of a witness to permit evidence of prior consistent statement to be admitted.

And this is so when the evidence is offered solely for rehabilitation and not for truth. Impeachment of a witness is often developed through the cross-examination of the

---

*United States v. Weil*, 561 F.2d 1109, 1111 (4th Cir.1977) (emphasis added). To the same effect is *United States v. Leggett*, 312 F.2d 566, 572 (4th Cir.1962).

**5.** While the use of prior consistent statements of the witness impeached traditionally was admitted only as corroborative evidence and not for the truth of the statements, Rule 801(d)(1)(B)

changed this as the Advisory Committee's Notes state:

> Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper inference in motive but not as substantive evidence. Under the Rule they are substantive evidence [and immune from attack as hearsay].

witness and satisfies the requirement of impeachment in this context. A good instance of impeachment through cross-examination is illustrated by the decision in *United States v. Fearns,* 501 F.2d 486, 489 (7th Cir.1974):

> Here, as a matter of fact, the prior consistent statement would have been admissible, since the cross-examination of the witness about her plea agreement amounted to an "implied charge against [her] of recent fabrication or improper influence of motive."

*See also United States v. Albert,* 595 F.2d 283, 289 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979) ("There may be some doubt whether express charges of improper motive or recent fabrication were made but the defense attorney, during his cross-examination of Chavez, implied improper motive or recent fabrication. Several times the defense counsel brought out that it was not until an arrangement was worked out between the government and Chavez on charges against him that he agreed to testify against the defendants"); *United States v. Stuart,* 718 F.2d 931, 934 (9th Cir.1983) (defendant's counsel cross-examined the witness to be corroborated on his plea bargain "thereby calling in question Van de Waten's [the witness's] motive to testify"); *United States v. Lopez,* 584 F.2d 1175, 1179–80 (2d Cir.1978) (a witness's prior consistent statement found admissible on re-direct examination for the "limited propriety" of rehabilitating the witness because of the repeated attempts during this cross-examination to portray him as "a liar").[6] Certainly, in line with these cases there was a sufficient foundation of impeachment in this case to support the introduction of corroborating testimony supporting Dicks' testimony.

Moreover, the defendant, in his brief, seems to concede that he sought to impeach the testimony of Ray Dicks, Amy Dicks, and Blackburn by proof of "criminal convictions" as developed in his vigorous cross-examination of the two Dickses and Blackburn. Appellant's brief at 18. The defendant spent page after page of his cross-examination in developing the criminal record of these witnesses, as a basis for his attack on their credibility, contrasting their record with that of the defendant who, as he declares in his brief, "was not impeached for criminal convictions." During the cross-examination, the defendant sought also to prove that Ray Dicks, in his direct testimony, had been inconsistent (1) about his involvement in drugs and other criminal activity, (2) about his introduction to the defendant when the arrangements for the purchase of the cocaine were being made, and later when (3) it was said that Dicks became convinced that the defendant and his cousin Kevin Bolick were trying to "cut him out" of the cocaine deal, a detail which the defendant contended Dicks had failed to mention in the statements he gave Ramsey, and (4) about the alleged inconsistency between his testimony and the defendant's construction of the written statement he gave Ramsey after his arrest. The implied suggestion of fabrication as arising out of the proof of the witnesses' plea bargain and the alleged inconsistencies in their statements, coupled with the general attack on their credibility by evidence of their criminal records, provide ample evidence of impeachment of the testimony of the Dickses to support the admission of the corroborating testimony here.

That Ramsey's testimony on what the Dickses told him about the relationship of the defendant to the sale of the cocaine met the requirement of consistency with their

**6.** *See also United States v. Khan,* 821 F.2d 90, 94 (2d Cir.1987):

> Khan argues that it was error to admit Sheikh's prior statement because Sheikh's "cross-examination did not elicit an actual or even implied inconsistent statement" and the only purpose of the prior statement was "to reinforce through repetition." We disagree. The government in this case did not have to point to a specific inconsistent statement by Sheikh. Defense counsel specifically attacked Sheikh's credibility on cross-examination and clearly implied that his failure to mention Khan at various times was inconsistent with his testimony on direct examination. See *United States v. Brennan,* 798 F.2d 581, 589 (2d Cir.1986). Sheikh's prior consistent statement thus was relevant to show whether the omissions were actually inconsistent with his testimony on direct.

testimony at trial was conceded by the defendant in his brief. Thus, the defendant declared in his brief:

Ramsey's version of what Ray Dicks had told him was consistent although more detailed, than Dicks' subsequent testimony (App. 86, et seq.). Amy's testimony differed from Ramsey's statement as to what Mrs. Dicks had told him, particularly about the money involved (App. 31, App. 162). Ramsey's testimony about Bartley Blackburn's statement (App. 44–49) was not as detailed as Blackburn's actual testimony (App. 171 et seq.), but consistent with it.

This conclusion satisfies the need for proof of consistency between the prior testimony and in-court testimony. In view of this conclusion, I see no need to marshal the evidence evidencing the satisfaction of the requirement of consistency under the principles for the admission of corroborating evidence.

Finally, there is no evidence that the statements testified to by the Dickses and Blackburn were tainted by any evidence of improper motive or purpose. The defendant seems to suggest that the Dickses were motivated by the plea bargain in testifying as they did later. The evidence does not support such a contention. The Dickses gave their statements at least a week before Dicks was approached about or heard of a possible plea bargain. The plea bargain could therefore not have played any part in his earlier statement and certainly could not have been the motive for the testimony of the two Dickses. The only other event that might have been considered as inducing the statement by the Dickses was the arrest which, the defendant might argue, created such fear in the Dickses as to induce them to fabricate their confessions and particularly this identification of the defendant as the cocaine source. We, though, held in *Henderson* that such a fact was not sufficient to taint the testimony. 717 F.2d at 139.

In summary, every requirement for the admission of the corroborative evidence in this case was present except the requirement that such evidence be offered before the witnesses whose testimony was being corroborated had testified. That requirement constitutes the sole ground—one of order of proof in the trial of the case—on which the defendant could attack the admissibility of the corroborative testimony. I accordingly address whether, under the facts of this case and the proper application of the Rules of Evidence, that fact compels the reversal of this conviction.

The challenged corroborative statements were testified to by Ramsey as an integral part of his account of the *res gestae* of his investigation. The district judge faced a dilemma when a general objection was made to this evidence: Whether to defer the proof of corroborating evidence until the witnesses whose testimony was to be corroborated had testified or to receive the evidence conditionally and subject to the government establishing the proper foundation for the introduction of corroborating evidence later. To have stopped Ramsey's testimony when he reached this point in his testimony would have left a hiatus in his testimony and would not have shown why the officer arrested the defendant at the time he did. At this point in his testimony, Ramsey's evidence would have been devoid of any reference to the defendant. In fact, without proof of the identification of the defendant as the source of the cocaine and his connection with the sale, Ramsey's testimony could be said to have been unimportant. Yet the question why the defendant had been arrested and charged in this case would have arisen in the minds of the jury. Ramsey was the investigating officer, the officer on whose statement the defendant was arrested. To have stopped Ramsey at this point would have been extremely confusing to the jury.

The situation facing the district judge in this case was well stated by the Supreme Court in *Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976):

A criminal trial does not unfold like a play with actors following a script; there is no scenario and can be none. The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingen-

cies inherent in the adversary process. To this end, he may determine generally the order in which parties will adduce proof; his determination will be reviewed only for abuse of discretion.

The district judge in this case chose in his discretion to "cope with the complexities and contingencies inherent in the adversary process" by permitting Ramsey to proceed with his story at the time of the investigation but, so far as the challenged statements were concerned, he did so only *conditionally* subject to the government's establishing later in its presentation of evidence that the statements were given under circumstances which would make them admissible as corroborative evidence under the standards governing the admission of such evidence. He went further to instruct the jury not to give any consideration to the evidence until the government had supplied the necessary elements for admissibility of the corroborative evidence and advised all parties that if this proof was not later admitted in evidence, the statements would be stricken and that the jury should not give any weight to challenged statements. So far as the record shows, the defendant made no motion at the end of the government's testimony to strike the challenged evidence on the ground that the government had not satisfied the condition stated by the district judge for the admission of such evidence. The failure to make such motion must be taken as a concession that all the requirements for the admissibility of the evidence under the condition stated by the district judge had been met.

It follows that, as I have said, the only issue in this phase of the case is accordingly whether the district judge erred in his discretionary ruling on order of proof in this case. More specifically, the question is whether in order to avoid confusion in the presentation of the evidence and to facilitate the trial under the circumstances of this particular case, the district judge's exercise of discretion to vary the general order of proof in this case because of its unusual context and to admit evidence out of the normal order of proof was an abuse of discretion. I am of the opinion that the recent decision in *Huddleston v. United States*, 485 U.S. 681, 688–89, 108 S.Ct. 1496, 1500–01, 99 L.Ed.2d 771 (1988), is decisive that the trial judge had such discretion and did not exercise it improperly.

In *Huddleston*, the defendant was charged with possession of and selling stolen goods in interstate commerce. There was no dispute that the goods were stolen; the issue at trial was whether the defendant knew they were stolen. It was defendant's contention that he was selling the goods for another on a commission basis and that he had no knowledge that the goods being sold were stolen. The government offered evidence of other sales as similar criminal evidence under Rule 404(b), Fed.R.Evid. The defendant objected because the government had not proved by clear and convincing evidence before admitting the evidence that the goods in those other sales were stolen goods. The defendant urged that, because of the great danger of prejudice by such evidence, "the jury ought not to be exposed to similar act evidence until the trial court has heard the evidence and made a determination under Federal Rule of Evidence 104(a) that the defendant committed the similar act." The Supreme Court sustained the ruling of the Court of Appeals that "the district court [had not] abused its discretion in admitting evidence of the similar acts in question here subject to being later properly linked up." In so doing, Chief Justice Rehnquist, speaking for an unanimous court, said:

> The trial court has traditionally exercised the broadest sort of discretion in controlling the order of proof at trial, and we see nothing in the Rules of Evidence that would change this practice. Often the trial court may decide to allow the proponent to introduce evidence concerning a similar act, and at a later point in the trial assess whether sufficient evidence has been offered to permit the jury to make the requisite finding. If the proponent has failed to meet this minimal standard of proof, the trial court must instruct the jury to disregard the evidence.

485 U.S. at 690, 108 S.Ct. at 1501. The court in a footnote to this part of the opinion added the following quotation from

21 C. Wright & K. Graham, *Federal Practice and Procedure* § 5054, pp. 269–70 (1977):

> When an item of evidence is conditionally relevant, it is often not possible for the offeror to prove the fact upon which relevance is conditioned at the time the evidence is offered. In such cases it is customary to permit him to introduce the evidence and "connect it up" later. Rule 104(b) continues this practice, specifically authorizing the judge to admit the evidence "subject to" proof of the preliminary fact. It is, of course, not the responsibility of the judge sua sponte to insure that the foundation evidence is offered; the objector must move to strike the evidence if at the close of the trial the offeror has failed to satisfy the condition.

Circuit court decisions are to the same effect as *Huddleston*. Thus, in *United States v. Ramsey*, 785 F.2d 184, 191 (7th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986), the court said that "a judge may decide to admit testimony subject to a later ruling, if that is the best way to handle a particular case." This principle has been most often applied in connection with the admission of a damaging statement of an alleged co-conspirator offered against a defendant prior to proof of the conspiracy. Representative of such cases is *United States v. Haimowitz*, 725 F.2d 1561, 1574–75 (11th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984). In that case the defendant asserted on appeal that the conviction rested on hearsay evidence and should not have been admitted. The alleged testimony of a witness objected to was that of one said to be a co-conspirator in an established conspiracy. The evidence was offered and conditionally admitted, subject to later proof "that a conspiracy exists, that the statement was made during the course of and in furtherance of the conspiracy, and that the declarant and the defendant were members of the conspiracy." The district judge admitted the evidence and at the end of the testimony he found, without any hearing, that the conditions for the admission of the evidence had been satisfied and "overruled all continuing objections to the allegedly inadmissible hearsay evidence." The Court of Appeals sustained the action of the district judge and upheld his admission of the evidence under the circumstances.

In a dictum in *United States v. Vaught, supra*, we recognized the propriety of this practice in conspiracy cases. The court said:

> The court admitted evidence of the December transactions prior to any attempt by the prosecution to establish the existence of a conspiracy. This was not error in itself since the judge may, in his discretion, permit the introduction of evidence as to things said and done by an alleged co-conspirator subject to being connected up and followed by evidence of the existence of the conspiracy.

485 F.2d at 323.

The same rule has been applied in other than conspiracy cases. In *United States v. Williams*, 837 F.2d 1009 (11th Cir.), *cert. denied*, 488 U.S. 965, 109 S.Ct. 490, 102 L.Ed.2d 527 (1988), the government had introduced and had received in evidence conditionally a written record. The defendant sought reversal because of the admission of the written record before foundation for its admission had been established. The court dismissed the objection with this language:

> Nor is it fatal to the admissibility of the yellow sheets that Sandridge's testimony provided the foundation after the evidence was already admitted. If the government had actually proceeded under Rule 801(d)(2)(A), the trial court could have permitted it to introduce the evidence before laying the foundation. As the Supreme Court has explained, the order of proof in a trial is in the discretion of the trial court. *See Geders v. United States*, 425 U.S. 80, 86 [96 S.Ct. 1330, 1334, 47 L.Ed.2d 592] (1976); *Goldsby v. United States*, 160 U.S. 70, 74 [16 S.Ct. 216, 218, 40 L.Ed. 343] (1895). This court has upheld convictions returned after trials in which the prosecution introduced admissions of a co-conspirator under Fed.R.Evid. 801(d)(2)(E)

before making the required showing that the conspiracy embraced both the defendant and the declarant and that the statement was made in furtherance of the conspiracy. *See, e.g., United States v. Haimowitz,* 725 F.2d 1561, 1575 (11th Cir.), *cert. denied,* 469 U.S. 1072 [105 S.Ct. 563, 83 L.Ed.2d 504] (1984). Although the need for flexibility in the order of proof may be particularly great when a party seeks to introduce the statement as a co-conspirator's statement, in that the existence of a conspiracy may not be provable until later in the trial, the need for flexibility in the introduction of a party-opponent's admission is not so negligible as to warrant an iron rule of chronological offer of proof. We conclude that Sandridge's testimony provided a sufficient foundation for the introduction of the yellow sheets as Williams' admissions under Fed.R.Evid. 801(d)(2)(A).

837 F.2d at 1014 (citations omitted).

In *United States v. Ortiz–Rengifo,* 832 F.2d 722, 725 (2d Cir.1987), the court was faced with a problem similar to that in *Williams.* It sustained the district judge's admission of the evidence on the basis of the subsequent establishment of a proper foundation for such admission. It said:

> If the trial judge is not satisfied that proffered evidence is relevant but believes that its relevance depends upon the proof of other facts, he may conditionally admit the evidence subject to proof of the connecting facts. Fed.R. Evid. 104(b). When the court has conditionally admitted evidence proffered by the government and no connecting facts are proven, the court may strike the evidence from the record at the close of the government's case or at the close of all the evidence.

*See also United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979); *United States v. Macklin,* 573 F.2d 1046, 1049, n. 3 (8th Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978).

The defendant has cited a number of cases which he asserts declare that the corroborative evidence in this case was inadmissible hearsay. Such cases are clearly not in point. In *United States v. Check,* 582 F.2d 668 (2d Cir.1978), the government proffered for admission statements made to a police officer by a confidential informant who "refused to testify at the trial." *Id.* at 670. The government sought to secure the admission of statements even though the informant Cali refused to testify by such "artfully phras[ed] questions [to the investigating officer] as to convey in essence ... to the jury the precise substance of the out-of-court statements Cali made to him." The heart of the decision finding such evidence inadmissible was that the government was enabled to "hav[e] in effect, an additional witness [*i.e.,* Cali] against Check while simultaneously insulating from cross-examination that witness, a witness we can safely assume would have been subjected to a scathing, and perhaps effective, cross-examination by defense counsel." *Id.* at 683. That case is not at all analogous to this case. The witnesses whose testimony was to be corroborated here were in court at trial, had testified and had been vigorously cross-examined. Manifestly, if the witness whose testimony was to be corroborated never testified, there was no testimony of the witness to be corroborated. That was *Check;* that is the opposite of this case.

*United States v. Pedroza,* 750 F.2d 187 (2d Cir.1984), was a case where out-of-court oral statements of witnesses were "offered in evidence to prove the matter asserted." Such testimony was found inadmissible. In so holding, the court said:

> The government argues that the hearsay statements were properly admitted as "background." There is no such exception to the hearsay rule. When statements by an out-of-court declarant are admitted as background, they are properly so admitted not as proof of the truth of the matters asserted but rather to show the circumstances surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed.

750 F.2d at 199–200. That language manifestly shows that the statements here were properly admitted.

In *United States v. Mazza*, 792 F.2d 1210, 1215 (1st Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1290, 94 L.Ed.2d 147 (1987), the DEA agents gave testimony covering the whole case drawn from out-of-court statements secured from a witness interviewed by them. This testimony of the statements made by this witness to the agents, the court said, "was not hearsay, for the court repeatedly cautioned the jury not to consider the out-of-court statements for their truth, but, to consider them as 'background,' or as showing the 'basis for the actions taken by the government.'" The court, however, found the testimony objectionable because considering "the [excessive] amount of the out-of-court statements," the prejudice resulting from the introduction of such testimony substantially outweighed the testimony's slight probative value. Nonetheless, the conviction was later affirmed on the ground that the admission was harmless. This was a "background" case and not a corroboration case anyway and is manifestly different from this case.

The admission of the testimony of the officer of the identification of the defendant as the cocaine source after all the requirements for its admission as corroborative evidence had been established did not unfairly prejudice the defendant. The only prejudice suggested by the defendant in this connection is that the tentative reception of the corroborative evidence "deprived [him] of the opportunity to cross-examine Ramsey effectively." He does not identify how this resulted. When Ramsey testified the defendant had the prior statements of Ray and Amy Dicks in his possession and he knew precisely what Ramsey had recounted as having been told by the Dickses. The possession of the statements by the defendant provided him with all the material he would need to cross-examine Ramsey. Nor did the defendant show any material differences between Ramsey's account of the Dickses' statement and the account of those statements as testified to by the Dickses. Moreover, the fact that

Ramsey testified before the Dickses accordingly did not provide the Dickses any opportunity to tailor their testimony later to conform with Ramsey's account of their statements to him. All witnesses in this case including the Dickses were sequestered by order of the court. The Dickses, therefore, did not hear Ramsey's testimony. It may be said that the fact that the officer gave his corroborative evidence before the Dickses testified gave some added weight to the credibility of this later testimony. The validity of such argument seems minimal at best and certainly is not sufficient to substantially outweigh the probative value of the testimony. This is especially so in view of the strength of the government's case.

The critical issue in the case was whether the defendant was the source of the cocaine. The Dickses testified that they paid the defendant for the cocaine and that the defendant later delivered the cocaine to them. While the defendant denied this testimony, undisputed circumstances proved in the case do not support his denial. The testimony of the defendant himself and his cousin was that they were at the Blackburn home at the very time Ramsey had delivered the money for the cocaine. Ray Dicks' testimony was that the defendant had been told that Ramsey was delivering the money at the time. The defendant sought to explain his presence at the time by testifying that he had driven his cousin, Kevin, over to the Dickses' to "get some help" in fixing the ignition of Kevin's car. If the purpose was to secure help in fixing a car, it is difficult to see how Dicks was expected to assist in fixing a car located 10 miles away at Kevin's grandmother's house. Moreover, Ray Dicks had no expertise or knowledge as an automobile mechanic; he was a brick mason. The whole explanation by the defendant of his admitted presence at the Blackburn house when the money for the cocaine was paid is implausible. Equally implausible was the fact that the defendant was present at the Blackburn home two days later when the cocaine was delivered to Ray Dicks; in fact, the Dickses testified it was the defen-

dant who delivered the cocaine to them for delivery to Ramsey pursuant to the sale made two days earlier. The defendant sought to explain his presence on this subsequent visit by testifying that he merely accompanied his cousin to retrieve a small toolbox that had been left there by Kevin before any of the events involved in this prosecution had occurred.

It is evident from this brief summary of events that all the circumstances of the case lent conviction to the statements of the Dickses and that the defendant's attempt to explain the coincidence that gave support to the Dickses' testimony lacks plausibility. In sum, I think that any possible prejudice that the defendant may have suffered by Ramsey's testimony to the corroborative evidence before the Dickses had testified was so ephemeral that, under all the circumstances of the case including its strength, it cannot be said that the prejudice in this case substantially outweighed the probative value of the corroborative testimony. Under those circumstances, there is no reason to deny admissibility.

In reaching a contrary conclusion, the majority, I suggest with deference, has taken too rigid and narrow an application of the rule as to the order of proof. The rule that the testimony of the witness whose testimony is to be corroborated must precede the introduction of the corroborating testimony is not an absolute and inflexible rule—nor do our cases so state. *Weil* did not speak of it as a rule to be applied rigidly; it said it was a rule to be applied "ordinarily." Similarly, *Henderson* was equally restrained; it declared simply that "[a]s a general rule a witness' credibility may not be rehabilitated unless it first has been challenged." *Huddleston*, I submit, makes it discretionary with the trial judge to rule as the district judge did in this case. In my opinion, the majority would really gloss over the holding in *Huddleston*. The majority declares that *Huddleston* only means that decisions such as the district judge's ruling in this context are "not immune from review" but the real holding in *Huddleston* was that order of proof is an issue for the discretion of the trial judge. Such an exercise of discretion is only to be overruled for arbitrariness or unreasonableness. The majority makes no such finding of such arbitrariness. The majority plants its ruling on its adherence to "that time-honored principle" that departure is not permissible from the "ordinary" rule requiring prior testimony of the declarant before corroborating evidence will be admissible—or, I may add, that statements of a co-conspirator may not be admitted against a defendant until the proof of a conspiracy has been established. What the majority does—I suggest with deference—is to declare that form or order of proof is more important than the proof itself. In reaching its conclusion, the majority elevated burden of proof over the importance of the proof itself. The statement from Wright & Graham, *Federal Practice and Procedure* § 5054, cited and quoted by Chief Justice Rehnquist in the Court's *Huddleston* opinion, does not accord with this ruling stated by the majority. I cannot agree with the majority's somewhat bland dismissal of *Huddleston*. I would affirm the district judge's ruling herein, finding the action of the district judge to be in accord with the decision in *Huddleston*.